BURROUGHS CORPORATION, A MICHIGAN CORPORATION & MICHAEL P. ADAMS & ADELIA A. ADAMS, HIS WIFE, PLAINTIFFS, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF CAMDEN, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY; AND HONEYWELL INFORMATION SYSTEMS, INC., A DELAWARE CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Law Division Camden County

Decided July 10, 1981.

494

Cyrus J. Bloom for plaintiff.

Robert A. Baxter for defendant Board of Chosen Freeholders of the County of Camden.

*Garrett M. Heher* for defendant Honeywell Information Systems, Inc.

DAVIS, J. S. C.

This is an action in lieu of prerogative writs in which Burroughs, Inc. seeks to compel the Camden Board of Chosen Freeholders (Board), to accept its bid for a countywide computer system and to enjoin Board from accepting the bid of Honeywell Information Systems, Inc.

The basis of Burroughs' application for restraints is that the statutory period of time for the award of the contract has expired. By cross-motions for summary judgment Burroughs and Honeywell alleges that the other is not a qualified bidder because the bid materially deviates from Board's specifications.

The primary issues presented by the parties' application are (1) whether the voluntary and unilateral provision in Honeywell's bid to hold it open for 90 days constitutes an impermissible extension of the 60-day limitation imposed by *N.J.S.A.* 40A:11–24 for the awarding of bids and (2) whether the deviations alleged by each party are material and nonwaivable by Board as a matter of law.

## I. *Deviations*

A contract may not be awarded upon terms which are different from those on which bidders were invited to bid. *Case v. Trenton,* 76 *N.J.L.* 696, 700 (E. & A. 1909). Also bidders, actual and potential, must be put on the same footing. *Skakel v. North Bergen,* 37 *N.J.* 369, 378 (1962). A fair and adequate comparison between the data submitted by bidders must be insured so as to avoid even the possibility of favoritism. *Belousofsky v. Linden Bd. of Ed.,* 54 *N.J.Super.* 219 (App.Div.1959). By diligently guarding against favoritism, improvidence, extravagance and corruption, the benefits of unfettered competition will be secured for the public. *Terminal Constr. Co. v. Atlantic Cty. Sewerage Auth.,* 67 *N.J.* 403 (1975). If the language of Board's specification is ambiguous or imprecise, no strained

interpretation of the words used will save them from being declared void. *Tice v. Long Branch*, 98 *N.J.L.* 214 (E. & A. 1922). As a matter of fact, the judicial policy of this State is to limit the discretion of local governments in this area. *Pucillo v. New Milford*, 73 *N.J.* 349 (1977).

■ For several years Board has been interested in upgrading its present Univac Spectra computer system which it uses to perform various business applications, such as producing payroll for its employees, inventory control, accounting of taxes, voter registration, jury selection, probation matters, Medicaid and many others. In response to Board's solicitation for bids Burroughs submitted its bid and identified its computer as being B–6800. This description is generic in nature since there are three models under this category. Each model performs the required functions but each has a different price. Board correctly rejected this bid because it had no way of knowing which model in fact was going to be delivered or to which model the price related. A fair comparison cannot be made with other bids if the model is not known. *Belousofsky v. Linden Bd. of Ed., supra.*

In order to update its equipment, Board recognized that most, if not all, of the existing application programs, such as those previously mentioned, be *converted* into a format usable by the new system. Board also decided that it would only give the successful bidder *minimum* assistance in carrying out conversion. The specifications clearly indicated these requirements.

■ Honeywell, in its response to the solicitation of bids, proposed that *Honeywell*, not Board, provide minimum assistance. Honeywell also stated that it would perform in accordance with the specifications if Board so required. Board waived the requirement of total conversion and accepted Honeywell's alternate proposal. This acceptance constituted an impermissible waiver as a matter of law.

■ Similarly, Board illegally waived its requirements that any proposed equipment be *new* when it accepted Honeywell's bid which provided for equipment which was supposedly "as good as new." Likewise, Board cannot elect to relax a specified delivery date for the equipment by accepting Honeywell's proposal to exercise their "best efforts" or, conditioning delivery as being "subject to prior sale."

As a part of its computer program and from a review of the specifications, it is clear that Board desired a system that could have enough of a memory system whereby any programs called to be executed by the computer could be completed without interruption because of insufficient memory space in the system. In order to provide this function (virtual storage) a great deal of data is stored on what may be likened to large magnetic phonograph records, called disk packs. These packs are stored in a disk drive which is a computer device peripheral to the major component which is called the CPU (Central Processing Unit).

To execute a program, the computer must invoke the program which is then resident on a disk pack and bring that program into the memory of the computer itself. However, because a modern computer is capable of executing numerous distinct programs simultaneously ("multi-programming") with each of those programs then stored in the memory of the computer, it frequently occurs that there is not sufficient memory then available in the computer to store the entire program then being invoked because much of the computer's memory is then occupied by the programs already in the process of execution. In such a situation, when there is not sufficient memory in the computer to store the entire program then being invoked, the capability of virtual storage permits the computer automatically to invoke and store a logical portion of the program to be executed and to begin execution of that program, and then to invoke further portions of that program for uninterrupted execution thereof as additional memory becomes available in the computer.

■ The specifications required that the equipment possess virtual storage capabilities. Honeywell proposed to deliver equipment without such storage capabilities. Therefore, Honeywell argued that the words "storage capability" could be interpreted to mean a future as opposed to a present capability. This interpretation is analogous to a case where an automobile is specified but a vendor proposes to supply only the body, with an option to the vendee to purchase the engine later at an additional cost. The imprecise language of Board's specifications render them void. Honeywell's strained interpretation of these words will not save them from that fate.

## II. *Statutory Bidding Requirements*

The issues presented above and their resolution clearly sets the stage for an interpretation of the Local Public Contracts Law, *N.J.S.A.* 40A:11–24, concerning the awarding of public contracts.

It is not necessary to label an interpretation liberal or strict. It is sufficient if the interpretation given to the language adopted by the Legislature is consistent with the normal meaning given to the words used, consistent with the stated purpose of the act and with the decisional law of this State as reported for the past 70 years.

*N.J.S.A.* 40A:11–24, which this court must now interpret, provides in relevant part of follows:

> The contracting unit shall award the contract or reject all bids within such time as may be specified in the invitation to bid, but in no case more than 60 days, *except that the bids of any bidders who consent thereto may, at the request of the contracting unit* be held for consideration for such longer period as may be agreed. All bid security except the security of the three apparent lowest responsible bidders shall be returned, unless otherwise requested by the bidder, within 10 days after the opening of the bids, Sundays and holidays excepted, and the bids of such bidders shall be considered as withdrawn. [Emphasis supplied].

At a regular meeting of Board on October 14, 1980, bids were formally received. Burroughs' bid was the lowest at $768,187 and Honeywell's was the next at $905,152. The other bids were substantially higher. Honeywell's bid provided that it would

not terminate until 90 days after the date of submission or on January 12, 1981. From October 15, 1980 until its caucus on December 15, 1980, Board, through a special committee, evaluated all of the bids submitted. At this meeting Board decided to (1) reject Burroughs' bid because of 39 alleged deficiencies; (2) waive in favor of Honeywell at least four of its deficiencies and (3) award the contract to Honeywell at its public meeting of *December 16, 1980.* On this date a publication appeared in the local newspaper wherein it was stated that Burroughs was the lowest bidder but Honeywell was being awarded the contract because of the alleged 39 deficiencies assigned to Burroughs.

Counsel for Board advised it on December 15, 1980 that an award to Honeywell would be improper because of the expiration of the statutory 60-day period. The sixtieth day after October 14, 1980 was December 13, 1980, a Saturday, which makes the next legal date for business December 15, 1980. Thereafter, on December 17, 1980, an article appeared in the local newspaper stating that the proposal would have to be rebid since the award was not made within the 60-day period following receipt of public bids.

From the date of the first newspaper article until January 23, 1981 Burroughs made inquiries of Board concerning the alleged defects but was not given any satisfactory response other than that the matter would be rebid. On February 4, 1981 Burroughs was finally advised that Board was a respondent in litigation instituted by Honeywell. Burroughs ascertained that the action was commenced in the Chancery Division of this court on January 5, 1981. An opinion was given and filed on January 12, 1981, but was not reported. This judgment, which was granted without Burroughs being made a party, declared that Board may award the contract to Honeywell. On February 19, 1981 this action was filed for the purposes stated above. This court, of course, makes no judgment regarding the merits of the litigation between Honeywell and Board but will resolve the disputes as presented in the instant litigation with all parties

participating. Honeywell has admitted, however, that this court is not bound by that decision.

Honeywell contends that because it agreed to hold its bid open for a period of 90 days after submission it is entitled to have the contract awarded to it even though it is clear that the 60-day time period had elapsed.

It should be kept in mind that the Legislature has, as recently as 1975, had § 24 under consideration because its predecessor had a 30-day requirement which, by experience, showed that such time period was too brief. *Public Hearings on Senate Bill No. 3090 before the Senate Committee on Municipal & County Government*, March 24, 1975, at 21. As a result of the debates, § 24 was changed to 60 days with a further chance for an extension if a request for one is made by the contracting unit and consents are given.

Since it is admitted that the 60-day period expired before the award, as required by the clear language of the statute, an examination need only be made to determine if the statutory exception has been complied with.

The question whether the hoped-for extension has to be consummated prior to the expiration of the 60-day period must first be resolved. Perhaps the answer is suggested by another question. How far along the spectrum of time, which is infinite, does the contracting unit (Board) have to request of the three lowest responsible bidders an extension of time for consideration of their bids?

Honeywell, inferentially, suggests that there is no limit and any time period beyond the 60-day period, regardless of when consummated, depends upon the astuteness of the bidder. I respectfully disagree. Once the statutory period has terminated without having been extended, there is literally nothing left to extend. I believe most bidders would read and have read the statute this way and have bidded accordingly. No bidder can conceivably have the right to unilaterally extend the statute by inserting a time period beyond the point where the Legislature has said it should stop.

The adoption of Honeywell's argument and all of its possible permutations would result in the conclusion that there was no need for an extension of the statute from 30 to 60 days nor a need for the drafting of an exception. Statutes are to be read sensibly, the purpose and reason for the legislation controlling. *Alexander v. N.J. Power & Light Co.*, 21 *N.J.* 373, 378–379 (1956).

Has it not been the judicial policy of our courts to limit the discretion of the local government in this area? *Pucillo v. New Milford, supra.* The discretion sought here is uncalled for.

To give some stability and consistency to the application of the exception set forth in § 24, this court concludes that any extension must be requested and obtained from consenting eligible bidders prior to the expiration of the 60-day period.

Honeywell argues that it gave its consent prior to the expiration by putting 90 days in its bid. True, but Board did not request such an extension before the 60-day period. As a matter of fact, it *rejected* the bid because of this time period.

Faced with this dilemma, Honeywell requests by inference that the decision in caucus to reject Burroughs' and accept Honeywell's bid be construed as a request for an extension. To construe the conduct of Board as a request for an extension is totally inconsistent with the facts. Board accepted its attorney's advice that it could not accept the bid because the time for award had expired. Board filed defenses consistent with this advice in a separate action by Honeywell against Board for a declaratory judgment. In addition, Board published or in some way was responsible for the publication of its intention to rebid in the local newspaper. The obvious meaning of this activity cannot be stretched into a statutorily required request for an extension.

It has been suggested that an actual request to other bidders for an extension was not necessary because they, including Burroughs, had already been taken out of contention by Board's special committee and therefore there would be no harm or favoritism to these bidders.

The statute has set up a class of bidders who are always in contention until the final award. The class is represented by "the three *apparent* lowest responsible bidders," *N.J.S.A.* 40A:11–24, whose security deposit must be retained by the contracting unit until the award is made. (Emphasis supplied). The purpose of this language is obvious. There is always the chance that the lowest bidder, upon examination, may not qualify. In this case, the contracting unit still has the security of the remaining two bidders until the class is exhausted or an award made.

█ During this period of time, which was between October 14, 1980 and December 15, 1980, Burroughs was a member of the statutorily protected class and entitled to a request for an extension if one was to be made. Any other conclusion would give Board the discretion to eliminate all bidders but its favorite, then give this bidder an extension which would work to the bidder's benefit in a number of ways.

In this case the benefit becomes obvious. Honeywell had a problem with the 90-day delivery schedule. On December 15, 1980 it did not have the equipment. However, it readily admits that it is *now* in possession of the necessary equipment and that it became available during the *unilaterally* extended period of time.

Nothing in the specifications remotely suggests that bidders should state how long their bids were effective and that Board may possibly utilize such criteria in awarding the bid. Certainly, a bidder may voluntarily set a time limitation on his bid; however, this voluntary limitation, which is in excess of the statutory 60-day period, cannot be utilized to the benefit of that bidder unless the contracting unit has given the same opportunity to all bidders at the time of the original advertisement for bids. Otherwise, Honeywell would be placed in the position of a legislator creating laws for its own benefit. A different interpretation would do violence to the legislative purposes and judicial policy of this State.

As Justice Francis stated and has often been quoted as stating in *Hillside Twp. v. Sternin*, 25 *N.J.* 317 (1957):

In this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way. [at 326]

To open the door, as requested by Honeywell, by loosely construing and violently stretching the intentions of the Legislature as expressed by unambiguous words and phrases, would clearly give too much discretion to Board. It would also create the possibility of favoritism, improvidence, extravagance and corruption.

Both bidders for this reason, and for all of the reasons heretofore expressed, are declared ineligible and both motions for partial summary judgment are granted. Board is hereby permitted to readvertise for bids.