196 N.J. Super. 241 (1983)
482 A.2d 174
PALAMAR CONSTRUCTION, INC., PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF PENNSAUKEN AND CRAIG TAYLOR CONSTRUCTION COMPANY, INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1983.
Decided December 21, 1983.
*243 Before Judges MICHELS, KING and DREIER.
John F. Strazzullo argued the cause for appellant Township of Pennsauken.
Mario A. Iavicoli argued the cause for appellant Craig Taylor Construction Company, Inc.
Barry W. Rosenberg argued the cause for respondent (Beck, D'Elia and Rosenberg, attorneys).
The opinion of the court was delivered by KING, J.A.D.
This case presents the issue of whether a municipality may attach post-bid conditions adverse to the bidder to an award of a publicly-bid construction contract. The award of the contract was challenged by the second-lowest bidder, plaintiff Palamar *244 Construction, Inc. (Palamar). The award was also challenged because the low-bidder did not supply a required contractor's qualification statement until one and one-half hours after the bids were accepted.
This is the procedural framework of the dispute. The defendant, Township of Pennsauken, advertised a notice to bidders on July 15, 1983 inviting bids pursuant to the Local Public Contract Laws, N.J.S.A. 40A:11-1 et seq., for the construction of a new clubhouse facility for the Pennsauken Country Club, formerly a private club which had recently been acquired with State Greenacres funding assistance. The bids were opened on Friday, August 5, 1983 at 2 p.m. The defendant, Craig Taylor Construction Company (Taylor), was the lowest-bidder at $1,275,000. The plaintiff, Palamar was the second lowest bidder at $1,294,975.
Palamar challenged Taylor's bid on two grounds: (1) that defendant Taylor was not a responsible bidder and (2) that the absence of a contractor's qualification statement in the bid package was a material defect. Hearings on Palamar's challenge were conducted before the governing body of the Township of Pennsauken (Township Committee) on August 31 and September 14. At the conclusion of the hearings, the Township Committee rejected Palamar's challenge and awarded the contract to defendant Taylor by a vote of 3-1. A formal resolution accepting defendant Taylor's bid and awarding it the contract was adopted by the Township Committee on September 19.
Palamar filed a complaint in lieu of prerogative writ on October 3 with the Superior Court, Law Division challenging the decision of the Township Committee. On that date, the Law Division judge issued an order to show cause and an interlocutory restraint enjoining the execution of the construction contract with Taylor and the initiation of any construction on the project pending final resolution.
After argument on October 23, an order for judgment setting aside the award of the contract to Taylor issued. On October *245 28 Taylor filed a notice of appeal and a motion seeking a stay of the Law Division's order. A stay was granted by this court on October 31, 1983 and the appeal was accelerated for argument on December 6 because of the public interest involved. R. 2:9-2.
This is the factual background. On July 25, 1983 Pennsauken published a notice inviting bids for the construction of the new clubhouse facility. The notice to bidders stated that the bids would be opened in public at the municipal building on August 5 at 2 p.m. and that the plans and specifications were available at the office of the township clerk. The notice also stated that a prebid conference would be held on July 25 at 2 p.m.
Plaintiff Palamar and defendant Taylor both obtained copies of the specifications and plans. The specifications contained a contractor's qualification statement and stated that the statement "must be presented" to the Township at the prebid conference. The prebid conference was held as scheduled. The conference was attended by neither Palamar or Taylor, nor did either submit a contractor's qualification statement on that date. In fact, only two of the eight bidders actually submitted a contractor's qualification statement at the prebid conference. Carruth, the Township's administrator, stated that several contractors attending the prebid conference said that they were not aware of the requirement in the specifications for providing the contractor's qualification statement at the conference. Consequently, Carruth in August sent a registered letter to each bidder stating that the "contractor's qualification statement ... must be removed from the specification packet or duplicated and submitted with your bid on Friday, August 5, 1983 at 2 p.m. in order for your bid to be considered." Defendant Taylor concededly received this letter.
The bids were opened by the administrator on October 5 at 2 p.m. Defendant Taylor's bid did not contain the required qualification statement. Craig Taylor, the principal of defendant *246 Taylor, was present at the bid opening and informed Carruth that the contractor's qualification statement had been inadvertently omitted due to a clerical error and asked if he could return to his nearby office to get the statement. Carruth told him to do so expediently. Carruth also informed Taylor that a decision as to whether his bid was acceptable would be reserved until Carruth reviewed the situation with the Township Committee and the solicitor. Taylor returned with the contractor's qualification statement to the township at approximately 3:30 p.m., one and one-half hours after the scheduled opening of the bids.
A public contract must "be awarded to the lowest responsible bidder." N.J.S.A. 40A:11-6.1. Defendant Taylor was the lowest bidder at $1,275,000; plaintiff Palamar was the second lowest bidder at $1,294,975. Palamar challenged Taylor's bid in a letter on August 8. Palamar asserted two grounds for disqualifying Taylor's bid: (1) that Taylor's failure to submit a contractor's qualification statement at the time designated was a material defect in the bid that could not be cured after the bids were opened and (2) that defendant Taylor was not a "responsible" bidder within the language of N.J.S.A. 40A:11-6.1. Hearings regarding Palamar's challenge were conducted before the Township Committee on August 31 and September 14, 1983.
The two hearings resulted in a 280-page transcript which is before us and was before the Law Division judge. Most of the testimony centered on whether Taylor was a "responsible" contractor. At the end of the second hearing session the Township solicitor advised the Committee that the omission of the qualification statement was material and could not be cured, relying on Hillside Township v. Sternin, 25 N.J. 317 (1957). Consequently he advised the Committee that Taylor was a disqualified bidder. The Township Committee rejected this advice and unanimously concluded that the defect was not material but trivial and that waiver would not threaten the competitive bidding process. This point was not treated by the *247 Law Division judge but has been briefed and argued on this appeal.
The factual testimony and documentary evidence of Taylor's "responsibility" as required by N.J.S.A. 40A:11-6.1 created a fact issue for resolution by the Committee. See Arthur Venneri Co. v. Paterson Housing Authority, 29 N.J. 392, 402 (1959). We see no need to review all of that testimony in detail here. While there was some dispute, we are satisfied from the record that there was a sufficient basis for the Township Committee's ultimate conclusion, by a 3-1 vote, that Taylor was a "responsible" bidder within the contemplation of the statute. Ibid. There was testimony that Taylor had never defaulted on a job, nor failed to complete a job, nor been denied an application for a bid bond or bonding. Taylor produced 11 favorable letters of recommendation from municipal officials, owners and architects for whom he had worked. The country club construction for Pennsauken was his costliest and most complex job to date. The Committee's main concern seemed to be supervision on the job. Taylor agreed that the job needed full-time supervision which he promised to furnish, eight hours a day, five days a week. The specifications had been silent on supervision. There was also some question raised about his break-out prices for subcontractor's services. But since the bid was in a lump-sum, the sums Taylor had planned to pay various subcontractors seems irrelevant. There was also a question about Taylor's corporate or individual status which was clarified satisfactorily and promptly.
After hearing the testimony and considering the documentation, the Committee, as noted, found Taylor "responsible" by a 3-1 vote. On the vote, the members of the Committee expressed themselves as follows
MR. MAROCCIA: Yes. The reasons that I am voting yes, are as follows:
I believe the law to be that a person who is the lowest bidder starts out with a presumption of his responsibility, and that the burden of challenging or showing the irresponsibility rest with other parties, certainly not with himself. So that therefore, he did not have the burden to prove that he is responsible, *248 but either the Township or the challenger, whoever that person may be, have the burden of going forward, and showing that that person is irresponsible.
I have severe reservations that are only [gastronomical] in nature, about Mr. Taylor. I have not been able to follow that up  Follow those [gastronomical] reservations about Mr. Taylor, with any cold hard fact before this board. I have seen no evidence to rebut that presumption of responsibility.
I can tell you, Mr. Taylor, that if you are successful tonight, it will be the most closely watched project in the history of Pennsauken Township.
I feel that the evidence put forth here were insufficient to show that you were irresponsible, and therefore my vote is to award you the contract.
* * * * * * * *
MR. O'CONNELL: My vote is a no, and I would like to explain why it is going to be no.
My background is not in law. My background is 30 years in construction, and as John Maroccia said, it is gastronomical problem, and I call it gut, and it is purely that.
I have severe questions on the office stand, the lack of construction background, the lack of estimating, the lack of engineering in Craig's company. I questioned here, the review of the proposed documents, and I didn't receive a satisfactory answer.
In testimony tonight, we heard a lot of testimony about doors being painted that shouldn't have been painted. Jobs, not doing all the things that he should have. These are miniscule things, that I am fully well aware that happen on every single job. I take very little weight from those things, because I know they happen on all jobs, but I have heard substantial people talk about lack of supervision.
The supervisor himself, who has been deemed to run this job, does not have the adequate, in my opinion, that is strictly my opinion, mechanical background to handle a job this complex on mechanical work.
I would like to say that I hope that I am wrong. I will do everything in the world to make sure that I am wrong, and this job comes out very very well in the end.
My vote is no.
* * * * * * * *
MR. ORTH: My vote is yes, because I could not convince myself, that it would not be in the best interest of this municipality not to award the contract to Craig [Taylor].
I certainly wish you the best of luck, along with Mr. Mauer. We are putting a lot of faith in you, if the next vote to come is the same. Just don't fall down on us.
I vote yes.
* * * * * * * *

*249 MAYOR JACOBS: My vote is yes, and Mr. Taylor I have reservations. I also, this June was my 30th year in construction, on the sheet-metal on HVAC, so you know that I had a hand in designing the heating system for that building.
There are some reservations that I have, but I also feel that the evidence presented was too weak for us, or for me to say that you should not be the bidder, or the qualified bidder, and have that job.
I reiterate what Bill Orth said, we are putting a lot of faith in you. All we want is a building that we are paying for. We want a beautiful club house and restaurant. We want it done right, and we want it done the first time, right the first time. I am sure you do too.
I think it can be a feather in your cap, because it will be the largest thing you have done, monetary and complexity wise, and I think you should make every effort to see to it, that it has the best people doing the job, and I wish you all the luck in the work, and us also.
After the vote, all present agreed that the resolution of acceptance and contract would contain a provision for full-time supervision and a personal guaranty from Taylor.
The formal resolution awarding the contract to defendant Taylor was adopted September 19. In addition to stating the committee's finding that defendant was a qualified and responsible bidder, the resolution also provided
* * * * * * * *
3. Craig Taylor Construction Company, Inc., has agreed that full-time supervision on a job of this size is necessary and that they will supply full-time supervision, eight hours per day, five (5) days per week and any other times that work will be ongoing on this project, and
4. Craig Taylor Construction Company, Inc. and Craig Taylor, personally and individually, will sign any and all performance warranties required for this project.
The prerogative writ proceeding in the Law Division was heard in a summary matter. The judge reversed the decision of the Township Committee that defendant Taylor was a responsible bidder. The judge reasoned that the two conditions imposed on the contract awarded to Taylor, i.e., full-time supervision and a personal guaranty, demonstrated such uncertainty on the part of the Township Committee that he was compelled to conclude "that they were unable to say that fair-minded and reasonable people could believe the award was in the best interest of the municipality." He found that the award to defendant Taylor was a result of "a compromise" and that there "[was] no place *250 in the award of municipal contracts for compromise." As a result of that compromise, he found the action of the Township Committee was arbitrary, capricious and unreasonable and set aside the award of the contract to Taylor.
A reviewing court cannot overturn the decision of a municipal body unless it finds that the decision was arbitrary, capricious and unreasonable. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296-296 (1965). "Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Ibid. In re Meadowlands Communications Systems, Inc., 175 N.J. Super. 53, 64 (App.Div. 1980). It is not the function of a reviewing court to substitute its judgment for that of the municipality's governing body and it is bound by the record before the governing body.
We do not agree that attaching the two post-bid conditions condemned the award as illegal per se or constituted a capricious municipal abuse of discretion which effectively should cast Taylor down as an "irresponsible bidder." As noted, there was ample evidence produced at the hearing to support the Committee's conclusion that Taylor was responsible. Here the factual conclusion of "responsibility" is unassailable in the courts as it was reasonably grounded in the evidence.
The Township's architect testified that this clubhouse job "absolutely" required full-time supervision. Unfortunately, this "absolute" requirement did not appear in the job specifications. He did not qualify his testimony in any sense and we can only conclude from it that full-time supervision was required no matter who got the contract. Indeed, plaintiff Palamar has agreed that if it ultimately prevails, full-time supervision will be provided.
Our courts have stated that a public contract cannot be awarded upon terms which are different from those contained in the invitation to bid. Burroughs Corp. v. Camden County, *251 181 N.J. Super. 492, 495 (Law Div. 1981). This rule is premised on the basic policy behind the competitive bidding statutes, i.e., assurance against favoritism, improvidence, extravagance and corruption in the bidding process. Terminal Construction Co. v. Atlantic City Sewerage Auth., 67 N.J. 403, 410 (1975). These policies, in turn, are meant to ensure that all bidders are equally situated in their competition for the public contract. Hillside Twp. v. Sternin, 25 N.J. 317, 322 (1957). "The conditions and specifications must apply equally to all prospective bidders. Otherwise, there is no common standard of competition." Id.
In the typical case an award is voided as against the policies behind competitive bidding because it places one bidder in a more favorable position than his competitors. Conversely, the imposition of the post-bid conditions in the present case on defendant Taylor places him in a less favorable, and possibly more expensive, position than his fellow bidders.
We have discovered only two reported decisions on the propriety of attaching post-bidding conditions to a public contract where the newly-negotiated conditions are more favorable to the public agency and more onerous to the agreeable successful bidder than the original specifications had been. In both instances the courts upheld the award of the contract. In neither case, as here, was there any suggestion of fraud, favoritism, corruption, or advantage to the low bidder. In Fishbach and Moore v. New York City Trans., 79 A.D.2d 14, 435 N.Y.S.2d 984 (App.Div. 1981), the Transit Authority obtained certain post-bid cost reductions through negotiations with the successful low-bidder, General Electric. Original unsuccessful bidders failed in their judicial attack on the award of the contract which award the court held was not in any way inconsistent with the policies underlying the New York public bidding statutes. The court stated
... First, the record here contains no suggestion of favoritism, fraud or corruption. General Electric was fairly and properly established as the lowest responsible bidder in a round of bidding which has never been challenged. *252 Hence, from the outset, General Electric was fairly entitled to primary consideration for the contract award. Second, the public interest was advanced since the authority obtained through negotiations a reduction in cost for the project. Three modifications were made on the initial bid: (1) the elimination of duplicative costs; (2) the agreement regarding copper prices; and (3) the inclusion of a provision for liquidated damages. Each represented an actual or potential savings on the price of the project. Third, the negotiations resulted in no departure from the contract's original specifications and no concessions whatsoever were made to General Electric. Thus no unfair benefit was afforded to General Electric at the petitioner's expense. Hence, the award of the contract to General Electric after post-bid negotiations was not, under the circumstances at bar, inconsistent in any way with the policies underlying the bidding statutes.
We do recognize that, as petitioner suggests, post-bid negotiations, even with a low bidder, may be conducted in such a manner as to violate the principles of competitive bidding. It is possible that an agency, through the threat of rejecting all bids, might attempt to coerce a low bidder to making unfair and unwarranted concessions. Yet, the bidder in such circumstances would not be without remedy since, as previously noted, the actions of an agency in awarding or in refusing to award a contract are not beyond judicial review and will be set aside where arbitrary. (See Matter of Carucci v. Dulan, 24 A.D.2d 529, 261 N.Y.S.2d 677; Matter of Gottfried Baking Co. v. Allen, 45 Misc.2d 708, 257 N.Y.S.2d 833 [COOKE, J.].)
In the case at bar, the Transit Authority was guilty of no such impropriety. It acted reasonably in seeking elimination of duplicative costs and in protecting itself against what it deemed to be inflated copper prices. And the liquidated damages provision was a reasonable concession, protective of the public interests. Moreover, the ultimate price of the bid was fair, being only slightly higher than the Transit Authority's own revised cost estimate and well below the original low bid. [435 N.Y.S.2d at 989].
In Fishbach & Moore, supra, the New York Appellate Division relied in part on City of Lakeland, Florida, v. Union Oil Co. of California, 352 F. Supp. 758 (M.D.Fla. 1973). There the City was successful in negotiating post-bid a $.03 lower price per barrel for oil than the lowest bidder, Union Oil Company, had actually quoted. The federal judge stated, in upholding the award,
It is axiomatic in Florida that a contract is absolutely void if made by public officers in derogation of a statutory duty to solicit competitive bids. The object of such legislation is to prevent favoritism or extravagance and to protect the public from collusive contracts. As a consequence, the statute should always be liberally construed to foster that purpose and avoid any likelihood of circumvention even in the absence of fraud or bad motive. [Citations omitted].
In this instance, however, those salutary principles are clearly inapplicable. Indeed, it might even be said that the same principles and purposes, from the *253 public's point of view, require that the contract be applauded and validated, not condemned, because it is plain by any measurement that the City got the best of the bargain. It is equally clear that proper procedures were followed. Detailed specifications were prepared and bids were solicited and received without irregularity of any kind. Union Oil was the low bidder, and in the process of awarding the contract the City was successful in negotiating a price even better than that contained in the bid. The post bid negotiations did not involve any departure from the original specifications, as occurred in both Robert G. Lassiter & Co. v. Taylor [99 Fla. 819, 128 So. 14 (1930)], and City of Miami Beach v. Klinger [179 So.2d 864 (Fla.App.3d Dist. 1965)], supra; and neither is this a case in which the City undertook to negotiate with a high bidder to the exclusion and prejudice of a lower bidder, as occurred in Louchheim v. City of Philadelphia, 218 Pa. 100, 66 A. 1121 (1907), the principal decision upon which Union relies. [Id. at 763].
See also 64 Am.Jur.2d, Public Works and Contracts, § 66 at 920.
We conclude that the conditions of full-time supervision and a personal guaranty were not in any sense a violation of the spirit or letter of our public bidding laws. In his testimony, Taylor agreed voluntarily to perform the conditions. Nor did their imposition, by some alchemy, change Taylor from a "responsible bidder" to an "irresponsible bidder." And he certainly was shown no favoritism or special advantage in this situation. We see nothing pernicious or invidious in this situation to require voiding the award. In addition, the personal guaranty condition was really superfluous and only required because of some temporary confusion as to Taylor's corporate status. Taylor was to be fully bonded; his bonding agent testified very favorably at the hearing. He said that Taylor had signed a continuing personal guaranty for the bonding company long before this matter arose. In conclusion, we must stress that a successful bidder is legally entitled to the contract as bid. A successful bidder is not required to "knuckle under" and make post-bid concessions to a municipality if it does not want to do so. We find the present situation to be entirely consensual and indeed sensible.
We now turn to the late submission of the contractor's qualification statement. Taylor's bid did not technically comply *254 with all requirements of the bid proposal. When the bids were opened at 2 p.m. on August 5 Taylor's bid package did not contain the contractor's qualification statement that all bidding contractors were instructed to include. None of the parties contested the fact that the qualification statement was omitted due to a clerical error and was submitted to the Township authorities one and one-half hours after the bids were opened. The sole controversy is whether this omission in Taylor's bid was a material defect that could not be cured after the bids were opened or whether it was merely a technical irregularity that the municipality could waive.
Our courts have been less than consistent in articulating the difference between a defect in a bid that is material and can not be waived and one that is material and can be waived. Here we affirm the findings of the Township Committee that the defect in Taylor's bid was not material and that the defendant should not be disqualified on that ground for these reasons.
In its most recent consideration of the subject, our Supreme Court stated
It is firmly established in New Jersey that material conditions contained in bidding specifications may not be waived. Township of Hillside v. Sternin, supra, 25 N.J. at 324; Case v. Trenton, 76 N.J.L. 696 (E. & A. 1909). This rule, however, does not apply to minor or inconsequential conditions. Public contracting units may resolve problems arising from such conditions in a sensible or practical way. [Terminal Construction Corp., Inc. v. Atlantic City Sewerage Auth., 67 N.J. 403, 411 (1975)].
The "strict policy" underpinnings announced in Hillside v. Sternin, 25 N.J. 317, 322-323 (1957), have been distinguished in subsequent cases and not all deviations are fatal to an award of the contract. Thus, where a bidder submits a different form of security than that called for by the specifications or mistakenly submits security in an amount substantially lower than that required, and the defect is timely cured, our courts have permitted the municipality to waive the irregularity and accept the bid. See, e.g., Bryan Construction Co. v. Bd. of Trustees, 31 N.J. Super. 200, 206 (App.Div. 1954) (submission of bid bond in lieu of certified check waivable); Michelotti v. Fair Lawn, 56 *255 N.J. Super. 199, 201-202 (App.Div. 1959) (submission of uncertified check where certified check was called for in specifications, cured within 24 hours and waivable); Marvec Allstate, Inc. v. Gray & Fear Inc., 148 N.J. Super. 481 (App.Div. 1977) (bidder mistakenly submitted certified check in the amount of $120,000 less than required but cured within 24 hours, held a waivable irregularity).
On the other hand, this court has held that when a defect is material, i.e., it goes to the heart of the bidder's ability to perform the contract, and it is not timely cured, the municipality may not accept the bid. See, e.g., Carey v. Boro of Fair Lawn, 37 N.J. Super. 159 (App.Div. 1955) (bidder's prequalification questionnaire, which was made part of the specifications, was deficient as it did not indicate whether bidder had the type or number of trucks necessary to perform the contract and the bidder never attempted to cure); Turco Paving Constructors, Inc. v. City Council of Orange, 89 N.J. Super. 93 (App.Div. 1965) (bidder failed to supply documentation that he had access to material necessary to perform the contract and attempted to cure only several months later, well past the time the municipality was statutorily-required to accept and award the contract). The common thread in these decisions is whether the defect threatens the policies underlying the competitive bidding statutes.
In Township of River Vale v. Longo Construction Co., 127 N.J. Super. 207 (Law Div. 1974), Judge Pressler enunciated a two-prong test for determining when a defect in a bid is material and hence unwaivable.
... There must, therefore, be applied two criteria in determining whether a specific noncompliance constitutes a substantial and hence nonwaivable irregularity  first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition. [127 N.J. Super. at 212].
*256 These criteria echo throughout the case law. For instance, the first criterion has been recognized both statutorily (N.J.S.A. 40A:11-25, N.J.S.A. 40A:11-26) and in the case law (Carey, 37 N.J. Super. at 163) as a legitimate concern in testing the bidder's qualification and responsibility in performing the contract. The second criterion is found in every case dealing with defects in bids for public contracts. The most recent expression by our Supreme Court said
Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions which may not under any circumstances be waived. [Terminal, 67 N.J. at 412].
The failure of defendant Taylor to submit a contractor's qualification statement with its bid in this instance neither deprives the Township of Pennsauken of its guarantee that the contract will be performed nor threatens the integrity of the policies behind the competitive bidding statutes. With regard to the first criterion, depriving the municipality of the guarantee of performance, the omission of the contractor's qualification statement did not affect assurances from either a financial or qualification viewpoint. Defendant Taylor submitted the required security to ensure that the contract would be entered into if the bid was accepted. Likewise, the Township was deprived of no assurances by the short absence of the contractor's qualification statement as there was little the Township could have learned from the qualification statement in the one and one-half hours between the opening of the bids and defendant's ultimate submission of the statement.
With regard to the second criterion, the initial omission of the contractor's qualification statement and its later submission within one and one-half hours could not have adversely affected *257 competitive bidding by granting defendant an edge over his fellow bidders. After the bids were opened at 2 p.m. on August 5, the Township personnel necessarily had to sit down at some time, but not necessarily in the first-two hours, and go over the contractors' qualification statements to determine if any of the eight bidders should be disqualified due to a deficiency in their statements. But the fact that defendant Taylor submitted his contractor's qualification statement one and one-half hours late in no way put him on a better footing than any of the other bidders or prejudiced the Township.
Another factor that should always be considered in the area of public contracts, is that the competitive bidding statutes are for the benefit of the public and should be construed as nearly as possible with reference to the public good. Terminal Construction, 67 N.J. at 409-410. With reference to this factor, the statement of the court in River Vale is particularly applicable to the present case.
The purpose of competitive bidding for local public contracts is, as has been frequently reiterated, not the protection of the individual interests of the bidders but rather the advancement of the public interest in securing the most economical result by inviting competition in which all bidders are placed on an equal basis, thereby guarding against favoritism, improvidence, extravagance and corruption. While this policy dictates that only bids which comply with the specifications and instructions are acceptable, it also dictates, lest the primary purpose of achieving economy be unnecessarily frustrated, that minor irregularities and immaterial variances in the form of the bid not be permitted to result in its invalidation, particularly where the municipality has, as here, expressly reserved the right to waive such defects and there is no suggestion of any fraud, bad faith or collusion surrounding the transaction. [River Vale, 127 N.J. Super. at 215-216].
Accord Michelotti, 56 N.J. Super. at 202, Marvec, 148 N.J. Super. at 488. The Township of Pennsauken reserved the right to waive minor defects in the bid proposals, and, properly did waive the present defect in finding that defendant Taylor was a qualified bidder.
The matter is reversed and remanded for the entry of a judgment in favor of defendant Taylor, against plaintiff Palamar, and ordering the award of the contract to Taylor.