**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3293-24

IN THE MATTER OF BID
SOLICITATION #23DPP00796,
PIONEER CREDIT RECOVERY
INC. PROTEST OF NOTICE
OF INTENT TO AWARD,
T1426 – ADMINISTRATION OF
DEFICIENT AND DELINQUENT
TAX ACCOUNTS.

Argued December 15, 2025 – Decided December 24, 2025

Before Judges Sabatino and Natali.

On appeal from the New Jersey Department of the Treasury, Division of Purchase and Property, RFP No. 23DPP00796.

Maeve E. Cannon argued the cause for appellant Pioneer Credit Recovery, Inc. (Stevens & Lee, PC, attorneys; Maeve E. Cannon, Patrick D. Kennedy and Michael A. Cedrone, of counsel and on the briefs).

Davis M. Flowers, Deputy Attorney General, argued the cause for respondent Department of the Treasury, Division of Purchase and Property (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Davis M. Flowers, on the brief).

Brian P. O'Neill argued the cause for respondent Coast Professional, Inc. (Chiesa, Shahinian & Giantomasi PC, attorneys; Brian P. O'Neill, of counsel and on the brief).

PER CURIAM

This appeal in a public bidding dispute arises from a May 23, 2025 final agency decision in which the Procurement Bureau of the New Jersey Treasury's Division of Purchase and Property ("the Division") awarded a $27.5 million, five-year contract to Coast Professional, Inc. ("Coast") over the incumbent contractor Pioneer Credit Recovery, Inc. ("Pioneer"). The contract is described in the record as the "largest state-level tax collection contract" in the United States. Applying the pertinent legal principles, we affirm the final agency decision awarding the contract to Coast.

Despite the highly technical nature of the subject matters involved, we endeavor to summarize the record concisely. In August 2023, the Division solicited bids on behalf of the State for a new contract to perform administrative, resolution, and collection functions for the Division of Taxation ("Taxation") concerning deficient and delinquent taxes. The solicitation specified that bidders needed to submit technical proposals to the Division along with their bids.

2

Most pertinent here, the Request for Proposals ("RFP") for the contract required that bidders: (1) provide with their bids a "draft implementation plan," including a specific timetable of the steps that the bidder would take to carry out the contract specifications; (2) submit assorted signed documents certifying that the bidder had and would continue to comply with all applicable laws and regulations; (3) if awarded the contract, procure twelve parking spaces for Taxation employees at the applicable office site; and (4) if awarded the contract, furnish the Division with a "final implementation plan," subject to the revisions and ultimate approval of the State contract manager.

Eight potential bidders attended a virtual conference in which the Division explained the parameters of the RFP and invited participants to submit questions for later response. Thereafter, the Division received only two bids: one from Pioneer (as the incumbent vendor) and the other from Coast. The Division's Evaluation Committee awarded the two bidders near-identical technical scores, which placed them well within what is described as the competitive bidding range.

After requesting that each bidder submit its best and final offer for review, Coast's proposed price was $27,575,914.68, while Pioneer's was $30,199,915.85, a price differential of approximately $2.6 million. The

Division notified the parties in September 2024 of its intent to award the contract to Coast.

Pioneer filed a timely protest with the Division. Eight months later, the Division issued a twenty-page final agency decision on May 23, 2025, concluding that it had correctly deemed Coast's lower bid responsive to the bid requirements and reaffirmed the award.

Pioneer appealed. Shortly thereafter, in August 2025, Pioneer moved to stay the implementation of the contract pending appeal and to accelerate the appeal. A panel of this court denied Pioneer's motion for a stay but granted acceleration of the appeal. The motion panel's order did not explicitly address whether Pioneer had presented a probability of success on the merits.[1]

Plenary briefing ensued. Although the Division's Statement of Items Comprising the Record ("SICR") identified Pioneer's bid submission among the listed items, the parties' appendices only contained Coast's bid submission and omitted Pioneer's. Consequently, we requested the Division to supply us with Pioneer's bid submission documents noted in the SICR and have reviewed those materials for comparative purposes.

---

[1] Counsel advised us at oral argument that the transition from Pioneer to Coast is anticipated to occur on July 1, 2026, subject to the outcome of this appeal.

Pioneer argues the Division improperly awarded the contract to Coast, essentially because the Division allegedly overlooked several material defects in Coast's bid submission and also failed to give fair consideration to what was termed a "revenue guarantee" presented in Pioneer's own proposal.

More specifically, Pioneer contends in its brief: (1) Coast's proposal includes numerous conclusory assertions of compliance, made in an improper attempt to cure material deviations of its bid; (2) the Division impermissibly excused material deviations in Coast's draft implementation plan; and (3) Coast's proposal materially deviates from the RFP, in that it clearly evidences an intent to (a) engage in prohibited means of remote access and exporting data to third-party systems, (b) have its caseworkers misuse federal tax information and research taxpayer credit history in a manner prohibited under the RFP and federal law, (c) utilize certain means of communication with taxpayers disallowed by the RFP, (d) use a "lockbox" to process check payments in violation of the RFP, and (e) attach improper conditions to the RFP's requirement to furnish twelve parking spaces for State employees at the contract site.

A-3293-24

As noted above, Pioneer also complains the Division did not properly evaluate Pioneer's proposed "revenue guarantee." It maintains that, if the terms of that guarantee were triggered, the State would reap considerable savings.

The Division, joined by Coast, responds that there were no material deviations in Coast's bid submission. Moreover, the Division contends its final agency decision adequately explains that Pioneer's "revenue guarantee" was merely conditional and sufficiently articulates why it was inconsequential to the Division's selection of Coast's bid over Pioneer's.

Under well-established precepts of procurement law, the standard of review of a determination of whether a bid on a public contract conforms to specifications is "whether the decision was arbitrary, unreasonable or capricious." In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590 (App. Div. 1995) ("On-Line Games") (citing Palamar Constr., Inc. v. Twp. of Pennsauken, 196 N.J. Super. 241, 250 (App. Div. 1983); Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 534 (App. Div. 1983)).

More generally, the ultimate determination of an administrative agency should be sustained unless the agency decision is "'not supported by substantial credible evidence in the record as a whole.'" Barrick v. State, 218 N.J. 247, 259

(2014) (quoting In re Stallworth, 208 N.J. 182, 194 (2011) (alteration in original)). Even where a court would have arrived at a different conclusion than the agency subject to its review, "'there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved.' It is not the function of a reviewing court to substitute its judgment for that of the [agency] . . ." Palamar Constr., 196 N.J. Super. at 250 (quoting Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296-97 (1965)). However, we apply a de novo standard of review to pure questions of law. See D'Agostino v. Maldonado, 216 N.J. 168, 182-83 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The applicable standards for public bidding of this State contract are also clear. Whenever advertising by a State procurement agency is required, the "award shall be made with reasonable promptness, after negotiation with bidders where authorized, by written or electronic notice to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the State, price and other factors considered." N.J.S.A. 52:34-12(a)(*g*) (emphasis added).

"The public bidding statutory scheme vests discretion in the Director of the Division to select which of the responsive bids is 'most advantageous to the

State.'" Barrick, 218 N.J. at 258 (quoting N.J.S.A. 52:34-12(a)). Hence, the bid with the best price can be, but does not necessarily have to be, selected.

That said, "[a]lthough broad, the grant of discretion to the Director to administer the public bidding process is not limitless . . . [as] the Division may not award a contract to a bidder whose proposal deviates materially from the RFP's requirements." Id. at 258-59 (citing On-Line Games, 279 N.J. Super. at 594-96). That is because "'[b]idding statutes are for the benefit of the taxpayers . . . [t]heir objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition.'" On-Line Games, 279 N.J. Super. at 589 (quoting Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., Dep't of Treasury, 99 N.J. 244, 256 (1985)). In light of these guiding principles, "'a public entity may not waive any material departure from bid specifications or requirements of law, and is bound to reject a non-conforming bid with such defects.'" Ernest Bock & Sons-Dobco Pennsauken Joint Venture v. Twp. of Pennsauken, 477 N.J. Super. 254, 265 (App. Div. 2023) (quoting Serenity Contracting Grp., Inc. v. Borough of Fort Lee, 306 N.J. Super. 151, 156 (App. Div. 1997)).

To determine whether a bid deviation is material, courts employ a two-part test first enunciated in Twp. of River Vale v. R.J. Longo Constr. Co., 127

N.J. Super. 207 (Law Div. 1974), and which the Supreme Court subsequently adopted in Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307 (1994) ("Meadowbrook").[2]

> [F]irst, [courts will consider] whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.
>
> [Meadowbrook, 138 N.J. at 315 (internal citations omitted).]

Even when a bid defect is properly determined to be non-material, a public entity is not always required to accept it. See Serenity Contracting Grp., 306 N.J. at 156. At its discretion, a public entity is permitted to either accept or reject a bid that does not conform "with specifications or formal requirements in non-material respects" as long as the public entity's decisions "reflect sound business judgment" and do not "bespeak any avoidance of the underlying purposes of public bidding requirements." Id. at 156-57 (citing Terminal Constr.

---

[2] Our courts have used either designation interchangeably to describe the same underlying test. See ML, Inc. v. Edison Twp. Bd. of Educ., __ N.J. Super. __, __ (App. Div. 2025) (slip op. at 14-15) (No. A-0179-25).

Corp. v. Atl. Cnty. Sewerage Auth., 67 N.J. 403, 431 (1975)); see also ML, Inc., __ N.J. Super. at __ (slip op. at 15).

Having applied these standards to the issues raised on appeal, we conclude that the Division lawfully awarded the contract to Coast, the low bidder. We reject all of Pioneer's various contentions of error. The Division had a sound basis to conclude that none of the alleged defects in Coast's bid were material. In addition, the Division did not misapply its authority in declining to treat Pioneer's proposed revenue guarantee as a dispositive selection factor.

Although we have fully considered all of Pioneer's arguments, we focus our brief discussion here to the three discrete issues that Pioneer chose to spotlight at oral argument before us: (1) the alleged flaws in Coast's draft implementation plan; (2) the so-called "remote access" defect and related issues of data migration; and (3) the revenue guarantee issue.

First, Pioneer contends that Coast's draft implementation plan was inadequate and also allegedly contradicted certain facets of Coast's bid submission. We discern no material defect concerning the draft plan. As the Division agency decision rightly noted, under Section 3.19 of the RFP, the draft plan simply was that: a "draft," not a final or definitive contractual term. The ultimate details of implementation would be worked out in the interval between

the contract award and the start date. Any necessary revisions would need the Division's approval in the Final Implementation Plan. We are unpersuaded by Pioneer's contention that Coast's draft plan was too indefinite and vague to pass muster, or that it deviated substantially from the RFP. At most, any discrepancies or omissions of the draft plan were non-material. Hence, they could be waived. See Serenity Contracting Grp., 306 N.J. Super. at 156-57.

We likewise are unpersuaded by Pioneer's claim that Coast's bid impermissibly violated the RFP because it referred at times to the "remote access" of taxpayer files. As the RFP describes, it is envisioned that the contract recipient would securely maintain taxpayer data by utilizing either the State's own computer programs or through physical files that are to be maintained on site. The RFP also required in Section 4.4.1 that the company's employees would all work at a fixed physical office location and not remotely.

The Division reasonably concluded Coast's bid submission did not materially deviate from these requirements. Although Coast's submission alludes in certain places to terms such as "remote access" and "data migration," the submission, viewed fairly and objectively, did not convey a plan to deviate from the applicable provisions of the RFP.

We agree with the Division that Section 6.14 of the RFP, which addresses this subject, does not preclude any remote access to the State's computer systems; rather, it sought assurances by the bidder that it would have the proper controls in place if Taxation needed and wanted to permit remote access. For technical reasons we need not articulate here, it is apparent from the RFP and the appellate briefing that situations could arise (such as, for example, in the changeover from the incumbent vendor to a new vendor) in which Taxation might want to permit occasional remote access to certain external systems to enable the vendor's employees to carry out their functions. Coast provided adequate assurances that it would adhere to the security requirements of the RFP. The Division did not manifestly err in determining, after considering the full context of Coast's bid, that Coast's submission was not materially defective. The agency reasonably concluded that the Meadowbrook standard of materiality was not violated. See 138 N.J. at 315.

Third, we reject Pioneer's argument that the Division arbitrarily failed to be swayed by the "revenue guarantee" proposed with Pioneer's bid. We understand that during the preceding contract period, there was a similar revenue guarantee required by the RFP and which Pioneer had supplied. As was explained to us at oral argument, for the present contract period, however, the

12

Division opted to leave out such a revenue guarantee from the new RFP, perhaps in the hope of attracting more bidders who would otherwise have been unwilling or unable to make such a guarantee.

The present RFP did allow bidders the option of presenting such a guarantee with their bids, and Pioneer elected to exercise that option. However, as the final agency decision points out, the so-called guarantee was indefinite and "at best an invitation to a further negotiation." It was "less than a firm offer." Given the conditional nature of the "revenue guarantee," the Division did not misapply its authority in treating it as a non-dispositive item in its final agency decision. The RFP made clear in Section 3.11 that any "additional terms" presented by a bidder "may" be accepted or rejected "at the State's sole discretion." That discretion was not misapplied by the Division here.

We are aware that the Evaluation Committee's report did not comment on the item, but the final agency decision—which is the decision we are asked to review on appeal—adequately explained in three pages why the item was unavailing.

To the extent we have not commented on them explicitly, all remaining arguments presented by Pioneer lack sufficient merit to be discussed in this opinion. R. 2:11-3(e)(1)(E). In sum, the Division's selection of Coast's lower

bid, which could save the State as much as $2.6 million in costs, was reasonable and consistent with the standards of N.J.S.A. 52:34-12(a)(*g*) and the applicable case law.

Affirmed. The previous denial of a stay of the contract award remains unaltered.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3293-24