892 A.2d 720

SUBURBAN DISPOSAL, INC., PLAINTIFF–APPELLANT, v. TOWNSHIP OF FAIRFIELD AND WASTE MANAGEMENT OF NEW JERSEY, INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 15, 2006—Decided March 3, 2006.

486

Before Judges COBURN, COLLESTER and LISA.

*Kathleen Marchetti* argued the cause for appellant (*Budd Larner,* attorneys; *Ms. Marchetti,* on the brief).

*Daniel R. Bevere* argued the cause for respondent Township of Fairfield (*Piro, Zinna, Cifelli, Paris & Genitempo,* attorneys; *David M. Paris,* of counsel; *Mr. Bevere,* on the brief).

*Sandra T. Ayres* argued the cause for respondent Waste Management of New Jersey, Inc. (*Scarinci & Hollenbeck,* attorneys; *Ms. Ayres,* on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

This is an appeal by an unsuccessful bidder, Suburban Disposal, Inc., from a summary judgment upholding the award by defendant Township of Fairfield of a three-year trash collection contract to defendant Waste Management of New Jersey, Inc. The contract included basic service, Alternate B (remove roll-off containers), and Alternate E (separate collection for white metal and goods). The Township chose, as it was permitted under the specifications, to award no bid for Alternate C (collection of school waste) or Alternate D (collection of grass clippings). However, without public bidding, Waste Management was, during its performance of this contract, actually collecting school waste and in negotiations with the Township regarding the price for the service.

Suburban argues that the contract award to Waste Management with Alternate E included was improper because Waste Management did not bid on Alternate E, but was permitted by the Township to change its "No Bid" after the bids were opened. Suburban further argues that the Township improperly avoided Alternate C by "hiring" Waste Management outside the bidding process to collect school waste. Finally, Suburban argues that we should not order a rebid but should declare the contract with Waste Management void and order that the contract be awarded

for the balance of the three-year term to Suburban, on the terms contained in its bid proposal. We agree with all of Suburban's arguments and reverse.

I

The bid specifications, as originally advertised, provided for three options, one-year, three-year or five-year service, and, in addition to basic service, provided for Alternates B, C and D. Before it was time to open the bids, the Township issued an addendum adding Alternate E. The Township reserved the right to choose the contract duration option and any or all alternates, and "at its discretion, award the contract to the bidder whose aggregate bid price for the chosen option, or any combination of options is the lowest responsible bidder." The specifications further provided that the Township "shall not award the contract based on the bid price for separate options." Thus, one contract would be awarded. It could be for one, three or five years. It could be for basic service only, or basic service plus any or all of the alternates. Bidders were "invited to bid on all or any Option Proposal." No bid could be withdrawn for sixty days after bids were opened.

Basic service provided generally for collection of residential waste, but specifically excluded recyclables. The addendum defined Alternate E as follows:

> Provide a separate collection twice per month per collection route for White Metal and Goods. Disposal shall be by the contractor at no cost to the Township. Certified weight slips shall be provided to the Township for purposes of recycling accounting.

Although basic service required collection of bulky items, "white goods," such as refrigerators, are designated as recyclables and are not subject to landfill disposal. Alternate E therefore imposed an additional burden on a contractor, to separately collect these items and dispose of them at a separate facility. Waste Management held the Township's trash collection contract immediately preceding the contract that is the subject of this appeal. Its practice was to collect all bulky items as part of the basic service,

commingling white goods with other bulky items. There was apparently no provision in the prior contract comparable to Alternate E requiring separate collection and disposal of white goods.

The bid proposal forms contained three sheets, one for each of the duration options. Each sheet contained a column for basic service and a column for each alternate. The bid sheets contained this statement above the columns: "The undersigned will contract to do all of the work and furnish all the materials, labor, equipment, etc .... for." Because the Township chose the three-year option, we will focus on the bids for that option. Each column contained three lines on which to insert the prices for years one, two and three, and a fourth line for the total. A signature line was provided for the bidder.

Before discussing the bid amounts, we note that Alternate B was a very minor item, requesting a unit price for each roll-off container required by the Township to be pulled. Only about fifteen pulls per year were anticipated, and the unit prices submitted by the various bidders were close in amount. Without dispute, the Alternate B bids would not affect the outcome, and to simplify our analysis, we will not include them in our discussion.

Six bidders submitted proposals. The three lowest bidders for basic service were Gaeta Recycling Co., Inc. ($897,200), Waste Management ($921,072), and Suburban ($981,000).[1] For Alternate E, Gaeta bid $157,000, Waste Management entered "No Bid," and Suburban entered "Included in Base Service." For Alternate C, Gaeta bid $27,300, Waste Management bid $83,976, and Suburban entered "Included in Base Service."

The bids were opened on December 9, 2004. The contract commencement date was February 1, 2005. At some time on or before January 7, 2005, the Township Engineer called a Waste Management representative. The substance of their conversation

---

[1] All bid amounts set forth in this opinion are the total for all three years.

was memorialized in this undated letter from the Waste Management representative, received by the Engineer on January 7, 2005:

> To further clarify the item we spoke about, Waste Management would like to make sure that you understand our position on Alternate E[,] which is to be included in the base trash bid at no additional cost to the Township. The white metal would be picked up as per specifications and tonnage receipts returned to the Township for recycling rebates.

On January 24, 2005, the Township adopted a resolution awarding the bid to Waste Management for basic services, Alternate B, and "it is so noted that Alternate 'E' White Metal Collection is included in the basic services." The contract was executed on February 1, 2005, and Waste Management began performing on February 5, 2005.

On February 7, 2005, Suburban filed this action, seeking a determination that the contract award to Waste Management was unlawful, an order restraining the execution and performance of the contract, and an order directing the Township to award the contract to Suburban. An Order to Show Cause was issued, but the court rejected Suburban's request for temporary restraints. Defendants filed answers and the parties filed cross-motions for summary judgment. Our factual recitation conforms with the motion record. No material facts were in dispute, and the matter was ripe for summary judgment. *See R.* 4:46–2; *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 666 *A.*2d 146 (1995).

At oral argument on April 25, 2005, a new disclosure was made. Counsel for both defendants admitted that Waste Management was also collecting school waste. The attorneys explained that during the previous contract term, which included the school waste alternate, Waste Management double-billed school waste and the parties were "in the process of negotiating that claim." Meanwhile, Waste Management was collecting the school waste and "not being paid for doing that at this time." Defendants represented that "[t]o the extent that there was an overcharge it's going to be reimbursed through the—through the collection, the ongoing collection." The Township's attorney characterized it this way:

"Waste Management is picking that up essentially working off the credit."

The trial judge found no impropriety in the Township's acceptance of Waste Management's contention that it intended "No Bid" to mean "included in the base bid at no additional cost." Alternatively, the judge found that any ambiguity in the phrase "No Bid" constituted a non-material defect, which the Township could waive upon being furnished Waste Management's "clarification."

## II

The issue before us is purely one of law. We apply the same standard as the trial court when determining whether summary judgment was properly granted. *Prudential Prop. & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.2d* 597 (App.Div.), *certif. denied,* 154 *N.J.* 608, 713 *A.2d* 499 (1998). As we have stated, there are no genuine issues of material fact. Our task, then, is to decide whether the trial judge's ruling on the law was correct. *Ibid.* It was not.

The phrase "No Bid" could not be more plain. In clear, unambiguous language it signified that Waste Management chose not to bid on Alternate E. It did not propose in its signed bid "to do all the work ... for ... Alternate E." We have no doubt that any attempt by the Township to compel Waste Management to perform Alternate E against its wishes would have been unsuccessful. Waste Management could rightly have asserted it did not bid on that service.

We find unpersuasive and disingenuous defendants' contention that because Waste Management was collecting white goods under the prior contract as part of the basic service, it was logical to interpret "No Bid" as "no extra charge." Under the previous contract, Waste Management was collecting white goods, commingled with other trash. It was not separately collecting and disposing of it as required in the new contract by Alternate E. It

would be at least as plausible to infer the opposite, that Waste Management intended to convey by its "No Bid" entry that it did not wish to do the extra work.

Waste Management's bid was not defective. It was valid and fully conforming, but, by its terms, applied only to those items on which Waste Management bid. Thus, the trial judge's analysis about the Township waiving or Waste Management curing a non-material defect was misplaced. This was not the cure of a defect. It was a change in Waste Management's bid proposal.

 The Township was obligated to abide by the procurement process prescribed by the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –50. Under *N.J.S.A.* 40A:11–3 and –4, municipalities must advertise for bids on public contracts that exceed the statutory threshold amount. *Meadowbrook Carting Co. v. Borough of Island Heights,* 138 *N.J.* 307, 313, 650 *A.2d* 748 (1994). The purpose of the competitive bidding process is "not the protection of the individual interests of the bidders, but rather the advancement of the public interest in securing the most economical result by inviting competition in which all bidders are placed on an equal basis, thereby guarding against favoritism, improvidence, extravagance and corruption." *Twp. of River Vale v. R.J. Longo Constr. Co.,* 127 *N.J.Super.* 207, 215, 316 *A.2d* 737 (Law Div.1974). Publicly advertised contracts must be awarded to the "lowest responsible bidder." *N.J.S.A.* 40A:11–4a.

 Fundamentally, bidders and the public entities that solicit bids are bound by the express terms of the bid proposal. "Settled principles of public bidding dictate that no material element of a bid may be provided *after* bids are opened." *George Harms Constr. Co. v. N.J. Tpk. Auth.,* 137 *N.J.* 8, 37, 644 *A.2d* 76 (1994). Adding a component of the work not included in the bid proposal is clearly material. One of the tests of materiality of a defect in a bid is "whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition." *Twp. of*

*River Vale, supra,* 127 *N.J.Super.* at 216, 316 *A.2d* 737. That bedrock principle of our public bidding scheme applies with equal force to post-bid conduct such as that which occurred in this case.

As a result of post-bid discussions, Waste Management was allowed, under the guise of clarification, to change its bid. Had the Township chosen to award only basic services (with or without Alternate B), Gaeta would have been the lowest bidder. By adding Alternate E to the award, Gaeta would be eliminated. The Township had the right to pick and choose between options and alternatives, and there was no impropriety in its decision to include Alternate E. That leaves Suburban as the lowest bidder that bid on Alternate E, that is, unless the Township could interpret Waste Management's "No Bid" to mean "no extra charge." It negotiated that so-called clarification with Waste Management. These actions were nothing short of post-bid manipulation, the effect of which was to steer the award to Waste Management, which was not entitled to it based on its bid proposal.

This process afforded Waste Management a decided unfair advantage over other bidders. It had the option, after all bids were opened, to decline the contract if the Township insisted on including Alternate E, or to sweeten its bid by adding Alternate E if it wanted to accept the award. Other bidders were not given a similar opportunity. Nor should they have been. Such post-bid manipulations are repugnant to our public bidding laws. A bid condition "whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid ... are the kind of conditions which may not under any circumstances be waived." *Terminal Constr. Corp. v. Atl. County Sewerage Auth.,* 67 *N.J.* 403, 412, 341 *A.2d* 327 (1975). The bid condition implicated here is that bidders were permitted to pick the alternates on which they wished to bid. They were not required to bid on all or any alternates. Their choices, however, once made, were binding.

Allowing a bidder to modify its choice after all bids are opened is at the heart of the evil proscribed by *Terminal Construction.*

In the context of defective bids and bidding processes, post-bid actions that would allow manipulation of the results have been declared unlawful. *See, e.g., Meadowbrook Carting Co. v. Borough of Island Heights., supra,* 138 *N.J.* at 320–21, 650 *A.*2d 748 (holding absence of consent of surety not waivable because bidder could decline to furnish it and avoid the contract); *Colonnelli Bros., Inc. v. Vill. of Ridgefield Park,* 284 *N.J.Super.* 538, 542–43, 665 *A.*2d 1136 (App.Div.1995), *certif. denied,* 143 *N.J.* 327, 670 *A.*2d 1067 (1996) (acknowledging that "there would be room for manipulation and fraud if, after the bids were rendered, a bidder could clarify its bid or express which figure it intended to use, depending on the other bids presented"); *James Petrozello Co. v. Twp. of Chatham,* 75 *N.J.Super.* 173, 180–81, 182 *A.*2d 572 (App. Div.1962) (concluding that post-bid determination by municipality of estimated number of new units that would be constructed during the five-year trash collection contract, on which bidders submitted a unit price as one component of the bid, was unlawful because it gave the municipality "the arbitrary power ... to favor either of [the] two low bidders").

We conclude that the award of the contract to Waste Management with Alternate E included was in violation of the Local Public Contracts Law. Therefore, that contract must be set aside.

### III

▇ Nearly two years remain on the three-year term selected by the Township. The Township has expressed its preference that, if we determine Waste Management's contract is void, it be permitted to award the contract for the remainder of the term to Suburban rather than rebidding. This would serve the public interest by avoiding uncertainty and potentially higher prices due to rising fuel costs, as well as the expense, inconvenience, and delay that would be occasioned by rebidding. This, of course, is the remedy Suburban seeks in this litigation. *See M.A. Stephen*

*Constr. Co. v. Borough of Rumson,* 118 *N.J.Super.* 523, 526–28, 288 *A.*2d 873 (Law Div.1972) (holding that an aggrieved bidder is not entitled to damages and is limited to the remedy of injunctive relief), *aff'd,* 125 *N.J.Super.* 67, 308 *A.*2d 380 (App.Div.), *certif. denied,* 64 *N.J.* 315, 315 *A.*2d 404 (1973). Suburban remains willing and able to perform the contract, and seeks an award of the basic service plus Alternates B, C and E.

Waste Management argues that the Township is bound by its choice to award only Alternates B and E. It argues that the court lacks jurisdiction to order the Township to award a contract that is broader in scope than that chosen by the responsible municipal officials.

To resolve this issue, we consider the conduct of the Township and Waste Management with respect to the collection of school waste during the term of the present contract, the service described in the bid specifications as Alternate C. In its bid specifications, the Township contemplated the prospect of including in the contract the collection of school waste. Alternate C was inserted for that purpose. Indeed, it was more than a prospect. The Township's prior contract included school waste collection. Refuse from the Township's schools had to be collected, and the board of education did not make its own contractual arrangements for that purpose. Come February 2005, when the old contract between the Township and Waste Management would expire, some provision for this service had to be made.

If the Township chose to include Alternate C in this contract, but not Alternate E, the bidders would have fallen in this order: Gaeta, $924,500 ($897,200 + $27,300); Suburban, $981,000 ($981,-000 + Alternate C included in basic service); Waste Management, $1,005,048 ($921,072 + $83,976). If Alternate E was also included, Gaeta would be eliminated, because adding its $157,000 bid on Alternate E would increase its total to $1,081,500.

The Township would be engaging in no impropriety by making such choices, which were expressly permitted by the specifications. All bidders submitted their proposals with that knowledge and on

an equal footing. By making either of those choices, the Township would have awarded the contract to Gaeta, if it included only Alternate C, or Suburban, if it included Alternates C and E. It could not have awarded it to Waste Management in either case. If Alternate C was included, Waste Management was not the lowest bidder with or without Alternate E (even if Waste Management's bid included Alternate E at no cost).

Keeping Alternate C out of the contract, combined with interpreting Waste Management's "No Bid" to mean no extra charge, rendered Waste Management the lowest bidder. But, in reality, Alternate C was not kept out of the contract. Waste Management continued collecting school waste during its performance of this contract. Whether it is being paid by the Township or "working off the credit" for its prior overcharging is of no consequence. The consideration it receives for the performance of the work is the same.

We reject as elevating form over substance defendants' characterization of the arrangement as the settlement of a dispute rather than a contract. *See Borough of Princeton v. Mercer County,* 169 *N.J.* 135, 161, 777 *A.*2d 19 (2001) (holding that "language incorporated into the agreements, as well as their designated titles" cannot "transform contracts otherwise subject to the [Local Public Contracts Law] into a contract subject to one of the Act's narrow exceptions"); *Clean Earth Dredging Techs., Inc. v. Hudson County Improvement Auth.,* 379 *N.J.Super.* 261, 269, 877 *A.*2d 363 (App.Div.2005) (holding that in determining the applicability of the Local Public Contracts Law "[i]t is the substance of the transaction that is determinative, not the terminology employed"). Contracts covered by the Local Public Contracts Law include agreements, which need not be "formal," "between a vendor who agrees to ... perform ... services and a contracting unit which agrees to compensate a vendor." *N.J.S.A.* 40A:11–2(21). The collection of school waste in exchange for compensation, whether by payment of money or reduction of debt, fits within this definition. And, we cannot overlook that Waste Management's three-year bid of

$83,976 for Alternate C exceeded the threshold requiring public bidding ($17,500 per year). *See N.J.S.A.* 40A:11–3a.

Defendants argue that Waste Management is providing the school waste collection service free and thus benefiting the public. That argument is contradicted by the undisputed fact that Waste Management is performing the service in exchange for an offset of its debt to the Township for past overbilling. More significantly, the argument highlights the nature of the irregularity. If Waste Management is performing Alternate C at no charge, or for something less than it bid, it further sweetened its bid through negotiations with the Township after all bids were opened.

Whether, as argued by defendants, the settlement of a dispute might, under some circumstances, fall outside the scope of the Local Public Contracts Law is not controlling in the circumstances of this case. The Township put out to bid the very service that defendants later, after all bids were opened, decided should be the subject of the "settlement of a dispute" rather than part of the award of a contract. Engaging in this arrangement outside the bidding process was improper, and in the circumstances of this case was a subterfuge to further manipulate the contract award after all bids were opened.

We conclude that by its conduct the Township made a de facto choice to award Alternate C as part of this contract and, through the means we have described, included it in Waste Management's contract. We therefore conclude that the appropriate disposition of the matter is to declare the Waste Management contract void and order the Township to award the contract to the lowest bidder for basic service and Alternates B, C and E, namely Suburban, for the balance of the three-year term in accordance with Suburban's bid proposal. To avoid any further delay, we so order in the exercise of our original jurisdiction. *See R.* 2:10–5.

Reversed.