994 A.2d 1045 (2010)
413 N.J. Super. 306
CFG HEALTH SYSTEMS, LLC, Plaintiff-Respondent/Cross-Appellant,
v.
COUNTY OF HUDSON, Defendant-Appellant/Cross-Respondent, and
Hudson County Board of Chosen Freeholders, Defendant-Respondent, and
Correctional Health Services, LLC, Defendant-Cross-Appellant/Cross-Respondent.
DOCKET NO. A-2034-09T2.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 2010.
Decided May 14, 2010.
*1047 Cindy Nan Vogelman, Secaucus, argued the cause for appellant/cross-respondent County of Hudson (Chasan Leyner & Lamparello, attorneys; Ms. Vogelman, of counsel; Ms. Vogelman and Jordan S. Friedman, on the brief).
Maeve E. Cannon, Princeton, argued the cause for cross-appellant/cross-respondent Correctional Health Services, LLC (Hill Wallack, L.L.P., attorneys; Ms. Cannon and Patrick D. Kennedy, of counsel; Ms. Cannon, Mr. Kennedy and Megan McGeehin Schwartz, on the brief).
Richard D. Trenk, West Orange, argued the cause for respondent/cross-appellant CFG Health Systems, LLC (Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C., attorneys; Mr. Trenk, of counsel; Mr. Trenk and Mark Y. Moon, on the brief).
Edward J. Florio, Hoboken, argued the cause for respondent Hudson County Board of Chosen Freeholders (Florio & Kenny, L.L.P., attorneys; Mr. Florio, of counsel; Timothy E. McCarthy, on the brief).
Before Judges RODRÍGUEZ, YANNOTTI and CHAMBERS.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
On December 18, 2009, the Law Division entered a judgment invalidating Resolution No. 296-8-2009, which was adopted by the Hudson County Board of Chosen Freeholders (Board) on August 13, 2009, and any contract entered into or awarded pursuant to the resolution. The County of Hudson (County) appeals from the trial court's judgment. Correctional Health Services, LLC (CHS) and CFG Health Systems, LLC (CFG) cross-appeal. We affirm on the appeal and the cross-appeals.

I.
The following facts are pertinent to our decision. In September 2003, the County awarded a five-year contract to CHS to provide medical and mental health services to inmates at the Hudson County Correctional Center (HCCC) and the Hudson County Juvenile Detention Center (HCJDC). In July 2008, in anticipation of the expiration of the contract, the County issued a publicly-advertised request for proposals (RFP) on a new five-year contract for the services. Among other things, the RFP required the successful bidder to provide a minimum of 1653 hours of staffing in certain designated positions, locations and shifts per week.
Initially, the RFP required the bidders to submit prices for staffing separate and apart from prices for certain ancillary services. The County thereafter issued an addendum to the RFP, which required the bidders to submit a price for all staffing and ancillary services for each year of the contract. The price did not include a breakdown of hourly rates for each staff position. The RFP did not require the successful vendor to submit the breakdown of the hourly rates for staff until after the contract was awarded. The RFP was sent to nineteen vendors. As part of the bid process, five vendors participated in a tour of the HCCC.
On November 7, 2008, CFG and CHS submitted bids in response to the RFP. *1048 CHS's bid price was $29,697,216; CFG's bid price was $38,843,454. It appears that the amounts bid exceeded the County's budget expectations. The County established an evaluation committee to review the proposals. On December 12, 2008, the committee recommended that the contract be awarded to CHS.
While the award recommendation was under consideration, the County retained Dr. Ronald Shansky (Shansky) to review the staffing requirements of the HCCC. However, on April 23, 2009, before receiving Shansky's report, the Board adopted Resolution No. 144-4-2009 awarding the contract to CHS. Thereafter, CHS submitted the hourly rates for the required staff positions.
On May 5, 2009, the Director of the County's Department of Corrections instructed CHS to maintain the staffing levels established under the 2003 contract, which required only a minimum of 704 staffing hours per week rather than the 1653 hours per week required by the new contract. Shansky issued a report dated May 26, 2009, in which he addressed the staffing needs at the HCCC and HCJDC as well as the staffing requirements in the RFP. Shansky recommended a substantial reduction of the total number of staffing hours required under the contract.
The County and CHS thereafter agreed to changes to the contract's staffing requirements. In June 2009, CHS provided the County with an analysis of the changes to the contract price that would result from the reduction in staffing to 1056 hours per week. The staffing changes represented about a thirty-six percent reduction in the staffing requirements of the contract. The County and CHS also agreed to a reduction in the contract price of about twenty-six percent.
On August 13, 2009, the Board adopted Resolution No. 296-8-2009, awarding the contract to CHS, based on its bid proposal and the revised staffing requirements, for a total contract price of $21,990,892. The County published notice of the contract award on September 14, 2009.

II.
On October 29, 2009, CFG filed an action in lieu of prerogative writs in the Law Division seeking, among other relief, a judgment: invalidating Resolution No. 296-8-2009; enjoining the County from entering into an amended contract with CHS; and requiring the County to re-bid the contract pursuant to the Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -51. Judge Maurice J. Gallipoli issued an order dated November 4, 2009, requiring defendants to show cause why the relief sought in the complaint should not be granted. Expedited discovery was permitted prior to the return date.
Judge Gallipoli considered the matter on December 3, 2009. The parties advised the court that the case was ready for adjudication. On December 16, 2009, Judge Gallipoli filed a written opinion, in which he concluded that CFG had standing to challenge the Board's resolution and seek a re-bid of the contract; CFG's action in lieu of prerogative writs had been commenced within the time required by Rule 4:69-6; and Resolution No. 296-8-2009 was invalid because it represented a material and substantial post-award change to the RFP in violation of the LPCL. The judge rejected CFG's demand that the County be ordered to re-bid the contract. The judge entered a judgment dated December 18, 2009, memorializing the conclusions reached in his opinion, and staying his judgment through January 8, 2010.
The County and CHS filed a motion in the trial court for a stay pending appeal. The court denied the motion but stayed *1049 the judgment through January 15, 2010. The County and CHS then moved before us for a stay pending appeal. We denied the motion but ordered that the appeal be accelerated. CHS thereafter filed an emergent motion with Justice Barry T. Albin of the Supreme Court of New Jersey seeking a stay of the trial court's judgment. Justice Albin denied the motion.

III.
The County and CHS contend that CFG does not have standing to maintain this action. We disagree.
CHS argues that CFG does not have standing to challenge the Board's August 13, 2009 resolution because it allegedly failed to include a consent of surety with its bid, as required by the RFP and N.J.S.A. 40A:11-22(b). Citing Meadowbrook Carting Co., Inc. v. Borough of Island Heights, 138 N.J. 307, 650 A.2d 748 (1994), CHS contends that CFG's failure to submit the required consent of surety was a material deviation for the bidding specification that could not be cured. For this reason, CHS maintains that CFG is barred from challenging the Board's resolution.
In his opinion, Judge Gallipoli noted that while CFG did not submit a consent of surety in the form prescribed by the RFP, CFG did provide a power of attorney that bound the surety to the County in accordance with the contract specifications. Even were we to conclude that CFG failed to submit the required consent of surety, this would not deprive CFG of standing to pursue the claims in its complaint because CFG is not challenging the initial contract award or seeking to compel the County to accept its bid. It is challenging the amendment to the contract.
The County and CHS also argue that CFG does not have standing in this matter because it is allegedly challenging the bid specifications. The trial court correctly found, however, that CFG is not challenging the RFP. In this case, CFG challenged the Board's August 18, 2009 resolution on the ground that the County unlawfully amended the contract. CFG sought a judgment invalidating that resolution and requiring the County to re-bid the contract.
"New Jersey courts always have employed `liberal rules of standing.'" Jen Elec, Inc. v. County of Essex, 197 N.J. 627, 645, 964 A.2d 790 (2009) (quoting N.J. Builders Ass'n v. Bernards Twp., 219 N.J.Super. 539, 530 A.2d 1254 (App.Div. 1986), aff'd, 108 N.J. 223, 528 A.2d 555 (1987)). "Under New Jersey's standing rules, `[e]ntitlement to sue requires a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed for the purpose of standing.'" Ibid. (quoting In re Adoption of Baby T., 160 N.J. 332, 340, 734 A.2d 304 (1999) (citations omitted) (alterations in original)). We are satisfied that CFG's interest in the contract is sufficient to give it standing to challenge the Board's August 13, 2009 resolution and seek a re-bid of the contract.

IV.
Next, CHS, the County and the Board argue that the trial court erred by invalidating the Board's August 13, 2009 resolution. Again, we disagree.
The LPCL provides that local contracting units must publicly advertise for bids on contracts that exceed a specified monetary threshold. N.J.S.A. 40A:11-3 and -4. Publicly advertised contracts must be awarded to the lowest responsible bidder. N.J.S.A. 40A:11-4(a). *1050 The purpose of the LPCL "is to `secure for the public the benefits of unfettered competition.'" Meadowbrook Carting, supra, 138 N.J. at 313, 650 A.2d 748 (quoting Terminal Constr. Corp. v. Atlantic County Sewerage Auth., 67 N.J. 403, 410, 341 A.2d 327 (1975)). "The statutes authorizing competitive bidding accomplish that purpose by promoting competition on an equal footing and guarding against `favoritism, improvidence, extravagance and corruption.'" Ibid. (quoting Twp. of Hillside v. Sternin, 25 N.J. 317, 322, 136 A.2d 265 (1957)).
Strict compliance with the public bidding statutes is required and a local contracting unit may not accept a defective bid. Id. at 314, 650 A.2d 748. Consequently, "all bids must comply with the terms imposed, and any material departure invalidates a nonconforming bid as well as any contract based upon it." Ibid. (citing Sternin, supra, 25 N.J. at 323, 136 A.2d 265).
A local contracting unit may waive "minor or inconsequential discrepancies and technical omissions" in a bid proposal. Ibid. (citing Terminal Constr., supra, 67 N.J. at 411, 341 A.2d 327). However, "`material conditions contained in bidding specifications may not be waived.'" Ibid. (quoting Terminal Constr., supra, 67 N.J. at 411, 341 A.2d 327). Our Supreme Court has explained that the distinction
between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications [that] by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions [that] may not under any circumstances be waived.
[Id. at 314-15, 650 A.2d 748 (quoting Terminal Constr., supra, 67 N.J. at 412, 341 A.2d 327 (alterations in original)).]
These principles apply to the initial award of a contract. They also apply to post-award changes to a contract that materially alter the basis upon which the contract was bid and awarded.
Our decision in Suburban Disposal v. Twp. of Fairfield, 383 N.J.Super. 484, 892 A.2d 720 (App.Div.2006), supports this conclusion. In that case, the Township sought bids for a trash collection contract, including basic service and various alternates. Id. at 487, 892 A.2d 720. In the bid specifications, the Township retained the right choose any or all of the alternates. Id. at 488, 892 A.2d 720. The successful bidder did not submit a proposal on one of the alternates, a choice the specifications permitted the bidders to make. Id. at 487, 892 A.2d 720. The Township awarded the contract to the bidder and included the alternate in the contract award. Ibid.
We held that the Township violated the LPCL by adding to the contract "a component of the work not included in the bid proposal[.]" Id. at 492, 892 A.2d 720. We stated that such a change in the bid was clearly material, because it gave the successful bidder "a decided unfair advantage over other bidders." Id. at 492-93, 892 A.2d 720. We noted that "`[s]ettled principles of public bidding dictate that no material element of a bid may be provided after bids are opened.'" Id. at 492, 892 *1051 A.2d 720 (quoting George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 37, 644 A.2d 76 (1994)). We observed that this "bedrock principle of our public bidding scheme applies with equal force to post-bid conduct[.]" Id. at 493, 892 A.2d 720.
In this case, the trial court found that the changes to the contract effected by the Board's August 13, 2009 resolution constituted a material change of the RFP. The record supports the court's finding. The RFP required the successful bidder to provide at least 1653 hours of staffing each week in certain designated positions, locations and shifts. The Board's August 13, 2009 resolution reduced the 1653 hours of staff time per week to 1056 hours per week. This was about a thirty-six percent reduction in the contract's staffing requirements. Moreover, because of the change in the staffing requirements, the contract price was reduced from $29,697,216 to $21,990,892. This represented about a twenty-six percent decrease in the price.
The change in the contract's staffing requirements was undoubtedly material because it substantially altered contract requirements that might have influenced potential bidders to refrain from submitting proposals. Potential vendors who could provide 1056 hours of staffing time per week may not have bid because they could not provide the 1653 hours of staffing time per week required by the RFP.
The materiality of this change is further shown by the substantial decrease in the contract price that resulted from the reduction in the staffing requirements. The trial court correctly found that such a material, post-award change in the terms and conditions upon which the contract was bid is contrary to the requirements of the LPCL. As Judge Gallipoli aptly noted in his opinion, to sanction such a change in a publicly-bid contract would render the intent and purpose of the bidding statutes meaningless.
The County and CHS nevertheless argue that the amendments to the contract were permitted by certain provisions of the RFP. They point to Section 1.3(a) of the RFP, which states that the County "reserves the right to reject any and all services, or parts thereof, to alter or change the procurement process, or the schedule at any time, or to terminate the services for any reason." However, the County did not "reject" any services that CHS was required to provide; it amended the contract to relieve CHS of its obligation to provide certain services. This section of the RFP does not give the County authority to substantially reduce the staffing requirements of the RFP.
The County and CHS additionally rely upon Section 4.1 of the RFP, which states that the "[i]nitial and continued employment of staff shall be subject to the approval of the County," and Section 4.2, which states that the "HCCC Director or his designee has final approval of all personnel who provide services at the HCCC and HCJDC[.]" These sections of the RFP also do not authorize the County to substantially reduce the staffing requirements of the contract. These provisions of the RFP pertain to the County's authority to approve the persons who provide the services under the contract, not to the staffing levels mandated by the RFP.
The County and CHS also rely upon Section 11.0(a) of the RFP, which states that "[t]he County will only pay for actual staffing rendered on behalf of HCCC and HCJDC." However, at her deposition, Deputy County Administrator Laurie Cotter testified that this section of the RFP was merely intended to serve as a basis for the imposition of liquidated damages in the event the successful vendor failed to provide the services required by the contract. *1052 Section 11.0(a) does not authorize the County to substantially reduce the staffing levels mandated by the RFP.
The County additionally argues that Home Owners Constr. Co. v. Borough of Glen Rock, 34 N.J. 305, 169 A.2d 129 (1961), provides the County with authority to amend the contract. In that case, the municipality publicly advertised for bids on certain road work and the plaintiff was awarded the contract. Id. at 307, 169 A.2d 129. When the plaintiff began to perform the work, it discovered that the base of the road was unstable and required additional excavation and placement of a stone base rather than the prescribed fill. Id. at 308, 169 A.2d 129.
The municipality's engineer and its inspector authorized a change in the contract for the additional work and materials and advised the plaintiff that the municipality would pay the additional cost. Ibid. Thereafter, the municipality refused to pay the plaintiff for the additional work and materials for several reasons, including the failure to obtain bids on the work. Ibid.
The Supreme Court held that the plaintiff was entitled to recover on its claim. Id. at 317, 169 A.2d 129. The Court noted that the contract had been awarded after public advertisement for bids. Id. at 315, 169 A.2d 129. The Court stated that the bidding
statutes must, of course, be faithfully observed and any attempt to evade them must be stricken down. But they must also be construed and applied fairly and sensibly so as to further rather than defeat the legislative goals. In the course of a construction contract, bona fide emergencies may well arise and incidental alterations may well be required. Where the resulting additional expenditures are reasonable and are conscientiously viewed as being in fulfillment of the original undertaking rather than departing therefrom[,] it would clearly be contrary to the public interest to halt the undertaking and call for bidding with respect to the additional work entailed by the emergency or the incidental alteration. It may fairly be assumed that such course was not within the contemplation of the Legislature.
[Ibid. (citations omitted).]
The County's reliance upon Home Owners Constr. case is misplaced. The changes to the contract authorized by the Board's August 13, 2009 resolution were not the result of any bona fide emergency. The record shows that, even before the contract was awarded, the County was concerned about the cost of the contract. Shansky was retained to consider the staffing levels at the HCCC. Furthermore, the amendments at issue here were not an "incidental" modification of the contract that was required to fulfill the initial undertaking.
"The County and CHS cite Greenberg v. Fornicola, 37 N.J. 1, 178 A.2d 339 (1962), and Palamar Constr., Inc. v. Twp. of Pennsauken, 196 N.J.Super. 241, 482 A.2d 174 (App.Div.1983), in support of their contentions that post-award changes to a publicly-bid contract are permissible." However, neither case authorizes the material post-bid change at issue in this case.
In Greenberg, the City of Asbury Park erected a pavilion that contained six stores and advertised for bids for the lease of the stores. Greenberg, supra, 37 N.J. at 5, 178 A.2d 339. The bidding specifications allowed the bidders to propose specific products to be sold in the stores. Ibid. The defendant submitted a proposal and was awarded a contract that allowed him to sell frozen desserts and other items. Id. at 3, 178 A.2d 339. The lease was thereafter amended to exclude frozen desserts and allow the sale of frankfurters, *1053 hamburgers and other products. Ibid. The plaintiff challenged the amendment to the lease. Id. at 3-4, 178 A.2d 339.
The Supreme Court held that the public bidding statutes did not preclude the City from amending the lease to delete the permission to sell frozen desserts because the change was intended "to meet an unanticipated need[.]" Id. at 9, 178 A.2d 339. The Court also stated that the addition to the lease of permission to sell frankfurters and hamburgers was not a violation of the public bidding laws because "any interested party could have bid for the store upon a proposed use which would have embraced all of the items [the defendant] was later permitted to sell." Id. at 10-11, 178 A.2d 339.
The facts in the Greenberg case are distinctly different from those at issue here. In Greenberg, the City agreed to modify the lease to delete the permission to sell frozen desserts in order to address "an unanticipated need[,]" whereas in this case, the change in the contract was clearly intended to address the County's concern with the cost of the contract, which was apparent when the bids were opened.
Furthermore, in Greenberg, the substitution of items that were not in the original bid was not considered material because any bidder could have proposed the sale of those items in its bid. By contrast, in this case, the changes in the contract were material because they relieved CHS of requirements that might have led potential vendors to refrain from bidding.
In Palamar, the municipality awarded a publicly-bid contract to Craig Taylor Construction Company (Taylor) for the construction of a clubhouse at its country club. Palamar, supra, 196 N.J.Super. at 244, 482 A.2d 174. The municipality was concerned with supervision of the project, and Taylor agreed to provide "full time supervision. . . eight hours a day, five days a week." Id. at 247, 482 A.2d 174. The municipality also required Taylor to submit a personal guaranty. Id. at 249, 482 A.2d 174. We held that the post-bid conditions did not violate the public bidding laws because they did not place Taylor in "a more favorable position than his competitors." Id. at 251, 482 A.2d 174. Rather, the post-bid conditions placed Taylor "in a less favorable, and possibly more expensive, position than his fellow bidders." Ibid.
Like Greenberg, the facts in the Palamar case are distinguishable from those in this matter. This case does not involve the addition of post-bid conditions that may have increased the costs to the successful bidder. This matter involves amendments to the contract that substantially reduced CHS's obligation to provide staffing services under the contract, a change that resulted in about a twenty-six percent reduction in the contract price.
The County and CHS additionally argue that the trial court erred by failing to conduct a plenary hearing before deciding that the changes to the contract were material. We note that the County and CHS informed the trial court that the record was sufficient for its decision. Therefore, the County and CHS should not be heard to complain that the trial court rendered its decision without conducting a plenary hearing. See State v. Jenkins, 178 N.J. 347, 358, 840 A.2d 242 (2004) (noting the "invited error" principle precludes a disappointed litigant from challenging on appeal a procedure it had urged the trial court to adopt).
Moreover, in this case, there was no factual dispute as to the changes to the staffing requirements of the contract that were authorized by the Board's August 13, 2009 resolution. The trial court found that these changes "were not minor or inconsequential, *1054 by any stretch of the imagination." The court's finding is amply supported by the record. We are satisfied that the court was not required to conduct a plenary hearing before reaching that conclusion.
We have considered the other arguments raised by the County, the Board and CHS and find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

V.
We turn to CFG's cross-appeal. CFG argues that the trial court should have ordered the County to re-bid the contract. According to CFG, the County abandoned the contract that it awarded to CHS in April 2009 and essentially awarded CHS a new contract without complying with the LPCL. CFG contends that, under the circumstances, the April 2009 contract cannot be revived and the only appropriate remedy is to order the County to re-bid the contract.
We are convinced, however, that the trial court correctly chose not to grant such relief. Abandonment of a contract requires proof that the parties intended to abandon their agreement. County of Morris v. Fauver, 153 N.J. 80, 96, 707 A.2d 958 (1998). The record establishes that the contracting parties never intended to abandon the contract that was awarded in April 2009, despite their agreement to reduce substantially the staffing levels under the agreement. As the court found, the contract awarded in April 2009 "still controls the rights and obligations" of the parties.
The court noted, however, that Section 1.2 of the RFP allows the County to unilaterally terminate the contract without cause on thirty days written notice. In our view, the court correctly concluded that it was for the County to determine in the first instance whether to terminate the agreement and re-bid the contract.
Affirmed on the appeal and the cross-appeals.