**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1270-24

J. FLETCHER CREAMER
& SON, INC.,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF TRANSPORTATION and
ROAD SAFETY SYSTEMS,
LLC,

     Respondents.

_____

Argued September 30, 2025 – Decided October 22, 2025

Before Judges Sumners and Augostini.

On appeal from the New Jersey Department of Transportation.

Gerard J. Onorata argued the cause for appellant (Peckar & Abramson, PC, attorneys; Gerard J. Onorata and Patrick T. Murray, on the briefs).

Jensen Vizzard, Deputy Attorney General, argued the cause for respondent New Jersey Department of Transportation (Matthew J. Platkin, Attorney General,

attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Morgan Rice, Deputy Attorney General, on the brief).

George Pallas argued the cause for respondent Road Safety Systems, LLC (Cohen Seglias Pallas Greenhall & Furman, PC, attorneys; Goerge Pallas and Clifford David, on the brief).

PER CURIAM

This appeal arises from the New Jersey Department of Transportation's (DOT) award of a publicly advertised roadway maintenance contract. DOT awarded the Maintenance Beam Guide Rail and Attenuator Repair Contract, North - 2025 (the Project) to Road Safety Systems, LLC's (RSS) as the lowest responsible bidder. J. Fletcher Creamer & Son, Inc. (Creamer) protests the bid and appeals DOT's December 17, 2024 final agency decision rejecting its protest of RSS's bid and request for reconsideration. We affirm.

I.

On September 19, 2024, DOT advertised the Project, the purpose of which was "to repair or replace damaged beam guide rail," and other related "safety infrastructure" issues in several northern New Jersey counties. Approximately three weeks later, DOT began accepting bids for the Project. Creamer, the incumbent contractor, had previously been awarded the project for the past

A-1270-24

seventeen years. However, this time, RSS submitted the lowest bid, while Creamer submitted the second-lowest bid.

On October 11, 2024, DOT notified RSS of its intent to reject its bid because it had been signed by Jeff Brandt, who was not listed as an authorized representative of RSS on DOT's online bidding platform nor in any of RSS's documentations. DOT gave RSS an opportunity to contest the rejection.

RSS clarified Brandt's authority to execute the bid. It provided an affidavit from RSS's Director of Operations – Northeast, William L. Yost III, stating that Brandt had been authorized to sign bids for RSS as of September 2024. RSS also detailed Brandt's employment history and confirmed his authority to submit bids. Upon further review, DOT found Brandt had been authorized to execute RSS's bid and allowed the bid to proceed. On October 29, 2024, DOT awarded the contract to RSS as the lowest bidder.

Creamer contested the award to RSS, submitting a formal bid protest. Creamer alleged RSS's bid was materially defective because RSS failed to disclose its ownership status in accordance with N.J.S.A. 52:25-24.2 and

3

because the Project did not have a small business enterprise participation plan (SBE).

Initially, Creamer alleged "upon information and belief" that RSS had been "acquired by an entity known as GeoStabilization International (GSI) in or around 2023 or early 2024." In response to Creamer's protest, RSS submitted a certification from Yost, attesting that "GSI did not acquire RSS and has never owned an interest in RSS." Yost further certified that "RSS is 100% owned by Soil Nail Holdings, LLC (Soil), which acquired RSS on or about February 23, 2024." Additionally, Yost certified that "RSS transferred all of its assets to Soil [] upon purchase of RSS as of February 23, 2024."

DOT denied Creamer's bid protest, deciding that RSS's ownership had been properly disclosed prior to submission of its bid in accordance with N.J.S.A. 52:25-24.2 and N.J.A.C. 16:44-3.2(a)(9) and that the Project did not have a SBE goal.

Creamer sought reconsideration of DOT's rejection of its bid protest. Regarding RSS's ownership, Creamer asserted that because RSS transferred all its assets to Soil in 2024, Soil was the "actual party in interest" and therefore,

4

the "true bidder." Moreover, Creamer argued, Soil was not authorized to do business in New Jersey.

On December 17, 2024, DOT issued a written decision, rejecting Creamer's request for reconsideration of DOT's acceptance of RSS's bid and assertions regarding RSS's ownership. DOT explained that, in accordance with N.J.S.A. 27:7-35.4 and N.J.A.C. 16:44-3.2 to -3.8, before accepting RSS's bid, it reviewed RSS's prequalification questionnaire, including RSS's "Notice of Partnership/Corporate Reorganization." DOT determined that RSS had experienced a change in ownership and renewed its classification, allowing it to bid on DOT projects. DOT also noted that the Project did not have either an SBE goal nor an emerging small business enterprise goal, "so RSS's status as either type of entity was not considered." Creamer requested that DOT stay the execution of the contract and commencement of the Project pending Creamer's appeal, which DOT denied.

On January 6, 2025, Creamer filed a notice of appeal and an application for permission to seek emergent relief. We permitted Creamer's request to file for emergent relief and granted a temporary stay. However, eleven days later, we denied Creamer's motion for a stay pending appeal.

A-1270-24

II.

"We use a deferential standard of review for governmental decisions in bidding cases." Anselmi & DeCicco, Inc. v. J. Fletcher Creamer & Son, Inc., 480 N.J. Super. 454, 462 (App. Div. 2025) (quoting Ernest Bock & Sons-Dobco Pennsauken Joint Venture v. Twp. of Pennsauken, 477 N.J. Super. 254, 263 (App. Div. 2023)). "[T]he standard of review on the matter of whether a bid on a local public contract conforms to specifications (which is a component of the ultimate issue of who is the lowest responsible bidder) is whether the decision was arbitrary, unreasonable[,] or capricious." Waste Mgmt. of N.J., Inc. v. Union Cnty. Utils. Auth., 399 N.J. Super. 508, 525 (App. Div. 2008) (quoting In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590, (App. Div. 1995)). "If a public entity's decision is grounded rationally in the record and does not violate the applicable law, it must be upheld." Anselmi & DeCicco, Inc., 480 N.J. Super. at 462 (quoting Ernest Bock & Sons-Dobco Pennsauken Joint Venture, 477 N.J. Super. at 263). "[W]e review issues of statutory interpretation de novo." Ibid.

Moreover, "[a]n agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police &

6

Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). The party challenging the administrative decision bears the burden of showing that the decision was "arbitrary, capricious or unreasonable." In re Project A1150-08, Exec. State House Comprehensive Renovation & Restoration, 466 N.J. Super. 244, 258 (App. Div. 2021) (citation omitted).

A.

Creamer contends RSS is not a responsible bidder because it failed to comply with statutory and regulatory disclosure requirements regarding its ownership at the time it submitted its bid to DOT. Both DOT and RSS counter that RSS properly disclosed its corporate reorganization in its Notice of Partnership/Corporate Reorganization form, which was submitted to and reviewed by DOT in the prequalification application. DOT and RSS further assert that DOT, being fully aware of RSS's change in ownership, nonetheless approved RSS's eligibility and qualification to submit bids on public projects in New Jersey. Therefore, they contend "RSS—not Soil[]—submitted the bid, signed the required certification, and stands as the contracting party." We are satisfied that DOT's decision to reject Creamer's bid protest was neither arbitrary, capricious nor unreasonable.

The intent of our public bidding statutes and well-established principles governing public bidding disputes are to "guard against favoritism, improvidence, extravagance and corruption" and promote fairness and transparency in public bidding. Terminal Constr. Corp. v. Atlantic Cnty. Sewerage Auth., 67 N.J. 403, 410 (1975). Thus, we begin our analysis with the governing laws and principles.

A public contract shall be awarded to "the lowest responsible bidder," N.J.S.A. 40A:11-4(a), and "'[l]owest responsible bidder'. . . means the bidder or vendor: (a) whose response to a request for bids offers the lowest price and is responsive; and (b) who is responsible." N.J.S.A. 40A:11-2(27). "'Responsive' means conforming in all material respects to the terms and conditions, specifications, legal requirements, and other provisions of the request." N.J.S.A. 40A:11-2(33).

"[A] public contract award is not determined simply by the lowest bid, but rather by the lowest bid that 'complies with the substantive and procedural requirements in the bid advertisements and specifications.'" Muirfield Constr. Co. v. Essex Cnty. Improvement Auth., 336 N.J. Super. 126, 132 (App. Div. 2000) (quoting Gaglioti Contracting, Inc. v. City of Hoboken, 307 N.J. Super. 421, 431, (App. Div. 1997)) (internal quotation marks omitted). "[A]ll bids

must comply with the terms imposed, and any material departure invalidates a nonconforming bid as well as any contract based upon it." CFG Health Sys., LLC v. Cnty. of Hudson, 413 N.J. Super. 306, 315, (App. Div. 2010) (quoting Meadowbrook Carting v. Borough of Island Heights, 138 N.J. 307, 314, (1994)).

N.J.S.A. 40A:11-23.2 provides that "[w]hen required by the bid plans and specifications," certain "requirements shall be considered mandatory items to be submitted at the time specified . . . for the receipt of the bids." "A statement of corporate ownership" pursuant to N.J.S.A. 52:25-24.2 is one of the non-waivable requirements. N.J.S.A. 40A:11-23.2. "[T]he failure to submit any one of the mandatory items shall be deemed a fatal defect that shall render the bid proposal unresponsive and that cannot be cured by the governing body." N.J.S.A. 40A:11-23.2.

To bid on DOT projects, a contractor must be classified and have a project rating. See N.J.A.C. § 16:44-3.2(a). To be classified, a contractor is required to complete a questionnaire disclosing certain information. Ibid. Furthermore, if a contractor is a corporation, partnership, or limited liability company it must submit:

> [A] statement setting forth the names and home
> addresses of all stockholders, partners or members

owning 10 percent or greater interest in the contractor. If one or more stockholders, partners or members is, itself, a corporation, partnership or LLC, owning a 10 percent or greater interest in the contractor, the statement shall also set forth the names and home addresses of all stockholders, partners or members owning a 10 percent or greater interest in that corporation, partnership or LLC. Disclosure of the names and home addresses of all stockholders, partners or members owning a 10 percent or greater interest shall continue at each level of ownership until all stockholders, partners or members owning a 10 percent or more interest have been disclosed[.]

[N.J.A.C. 16:44-3.2(a)(9).]

Therefore, "[n]o corporation, partnership, or limited liability company shall be awarded any contract" if they have not submitted the requisite statement of any stockholder owning more than ten percent or greater interest in the company. N.J.S.A. 52:25-24.2.

Contractors are required to provide notice of a proposed reorganization, proper registration of the new status with the State, and proof that the reorganization shall not affect any existing contracts or their project rating and financial capability to perform on those contracts. N.J.A.C. 16:44-12.2(a)(1), (2) and (4). If the reorganization involves a transfer of assets to a new or different corporation or LLC, the new corporation or LLC "shall be required" in part to "[s]atisfy the classification requirements as specified under N.J.A.C.

16:44-2.2, including the filing of a new Questionnaire."  N.J.A.C. 16:44-12.2(a)(5)(ii).

Before the Project was advertised, RSS applied to renew its classification to bid on DOT projects.  Because RSS had experienced more than a ten percent change in ownership, DOT required RSS to submit a corporate reorganization notice.  RSS submitted the reorganization notice, confirming that Soil acquired RSS on February 23, 2024.  RSS advised DOT of this organizational change on July 22, 2024—well before the Project bidding began.  Therefore, Creamer's assertion that RSS failed to honestly disclose its "true owner" prior to or at the time of the bid is without merit.

Creamer relies upon George Harms Const. Co. v. New Jersey Tpk. Auth., 137 N.J. 8, 36 (1994) to support its position that RSS's failure to disclose company ownership results in a material, non-waivable defect.  However, Creamer's reliance is misplaced because this case does not address a company's duty to disclose its ownership but rather deals with a contract's specifications requiring bidders to enter project labor organizations agreements.  Id. at 36-37.

To the extent Creamer relies upon our decision in George Harms Construction Company, 161 N.J. Super. 367, 370-81 (App. Div. 1978), we strictly construed the ownership disclosure requirement of N.J.S.A. 52:25-24.2

11

and held that this defect is non-curable. However, there is no dispute that RSS disclosed its change in ownership in advance of its Project bid.

Creamer also asserts that it requested disclosure of the documentation RSS provided in its prequalification application; namely, it sought RSS's classification application. However, pursuant to N.J.A.C. 16:1A-4.3(a)(2), DOT did not provide this form because "any information provided to the Department by . . . contractors for the purposes of becoming prequalified or classified" is exempt from public access. Creamer provides no legal basis for its request for these documents.

Finally, Creamer argues that there are too many "open questions" regarding RSS's ownership to allow RSS's bid to stand. Specifically, Creamer relies on Yost's December 6, 2024 affidavit which states that RSS is "100% owned by Soil." Creamer objects to Yost's January 16, 2025 affidavit submitted in response to Creamer's emergent motion, explaining Yost's prior statement. Because RSS did not seek leave to supplement the record pursuant to Rule 2:5-5, and since this affidavit is outside the record in violation of Rule 2:5-4(a), we decline to consider it.

## B.

Creamer contends RSS's bid should also have been rejected because it was not properly signed. DOT asserts it properly exercised its discretion by permitting the bid to stand after reviewing the additional information, confirming Brandt's authority to execute bids. Likewise, RSS argues nothing improper occurred regarding the execution of the bid.

Under N.J.A.C. 16:44-7.4(b)(2), DOT may reject a bid if it is not properly signed. Additionally, Section 102.10 of the Standard Specifications requires an "authorized representative" of the bidder to digitally sign the bid. DOT may reject an internet bid that is not digitally signed by the authorized representative.

Moreover, before rejecting a bid, DOT "will notify the bidder and give it an opportunity to present additional information." N.J.A.C. 16:44-7.4(a). DOT did precisely that upon learning that Brandt was not listed as an authorized representative of RSS on DOT's online portal or in its classification application.

In response, RSS provided an affidavit from Yost and an internal memorandum dated September 29, 2024, detailing Brandt's employment history and authority to execute bids on behalf of the company. Having reviewed the additional material, DOT was satisfied Brandt was an authorized representative of RSS and it approved RSS's bid. We agree with DOT and RSS that the failure

13

of Brandt to be listed as an authorized representative was not a material, non-waivable defect.

DOT acted within its discretion by providing RSS with an opportunity to respond before its bid was rejected on this basis. Satisfied as to Brandt's authority, DOT also exercised its discretion by permitting the bid to stand. We are not persuaded that doing so was arbitrary, capricious or unreasonable.

After considering Creamer's challenges, DOT determined that RSS's bid complied in all material respects with the statutory and regulatory requirements. Having reviewed that determination under a deferential standard and recognizing DOT's special expertise, we affirm DOT's final agency decision.

To the extent we have not addressed any of Creamer's remaining arguments, those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-1270-24